Augusta **NEWELL**, a duly appointed, qualified and acting Inspector of Elections of the 22 E.D. of the 33 A.D., Queens County, New York and within the Ninth Congressional District on behalf of herself and others similarly situated and James J. Delaney, Plaintiffs

v.

Matthew J. **TROY**, Jr., individually and as Chairman of the Executive Committee of the Democratic Party of the County of Queens, State of New York, et al., Defendants.

Civ. A. No. 72 C 656.

United States District Court,
E. D. New York.

June 8, 1972.

1254

Emanuel Thebner, New York City, for plaintiffs.

Arthur W. Lonschein, Jamaica, N. Y., for defendants Troy and Watkins.

1. Plaintiffs' Brief, p. 2.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

In this action for injunctive relief to remedy alleged violations of the Voting Rights Act, 42 U.S.C. § 1971 et seq., plaintiffs have moved on notice for a "temporary restraining order" and defendants Troy and Watkins have cross-moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

Plaintiffs acknowledge that "this case arises out of a political primary contest for Congressman for the 9th Congressional District of New York." [1] The complaint and its attached exhibit [2] amply reveal the nature of that contest. Plaintiff Delaney has for some 30 years represented the 9th Congressional District in Queens as a Member of the House of Representatives. He has now been denied the endorsement of the regular Democratic Party organization in Queens as a candidate for reelection in November. That organization, whose actual leader is defendant Troy and whose county chairman is defendant Watkins, is supporting as its candidate New York City Councilman Thomas J. Manton. A number of Democratic local leaders are bucking the organization by continuing to support Congressman Delaney in his primary contest effort to wrest the Democratic nomination from Councilman Manton. According to the complaint and exhibit this has led to widely publicized threats by defendant Troy that he will "kill" these dissident leaders and their followers if they persist in their insurgency. Such political hyperbolism, even if true (defendants flatly deny it), is obviously not to be taken literally but at most as a threat to destroy or sap the political lifeblood of those leaders by depriving them of the patronage jobs they ordinarily dispense among their adherents. And this is what the present complaint is all about.

2. A photocopy of an article published in the New York Times of May 5, 1972 entitled "A Democratic Drag-out Battle."

Plaintiff Newell alleges that she is a duly appointed and qualified inspector of elections in an election district in the County of Queens within the 9th Congressional District.[3] She further alleges that she and other inspectors of election are being threatened with immediate dismissal without cause because they support plaintiff Delaney. These threatened dismissals are allegedly in violation of the New York State Election Law, McKinney's Consol.Law, c. 17, § 39 of which specifies a term of one year commencing the first day of each September. According to the complaint these actions of the defendants have a twofold purpose: first, "to intimidate, coerce and threaten said persons, their friends and supporters, as voters to influence their vote" ; and second, to replace election inspectors loyal to plaintiff Delaney with "outsiders" (who presumably support the Manton candidacy) prior to the primary election to be held June 20, 1972, whose unfamiliarity with the districts "will impede and impair the speedy and expeditious vote casting, cause long delays, discourage voters and otherwise cause plaintiff Delaney to be seriously affected thereby". To prevent it, the complaint demands "a temporary restraining order" and ultimate judgment decreeing a permanent injunction enforcing 42 U.S.C. § 1971 et seq.

Defendant Troy, on behalf of defendants, has submitted an affidavit in opposition to plaintiffs' application for a temporary restraining order and in support of the cross-motion to dismiss the complaint.[4] He flatly denies plaintiffs' allegations and asserts that statements attributed to him in the New York Times article annexed to the complaint are based on hearsay and are taken out of context.[5] The affidavit acknowledges that defendant Watkins, as Chairman of the Democratic County Committee of Queens, requested the removal of all previously appointed election inspectors by letter dated May 2, 1972 addressed to the Board of Elections. That Board, by letter dated May 4, 1972, acknowledged the request, stating:

> "Pursuant to Section 45 of the Election Law, it is your prerogative to remove all Election Inspectors previously appointed and certify a new list of Election Inspectors."

The moving defendants contend that such removal is expressly provided for in the New York Election Law, that this action is without merit and that plaintiffs are attempting to use the court as a vehicle for political publicity as evidenced by a copy of a campaign release issued by plaintiff Delaney captioned "Troy Charged With Interfering in Federal Election". In opposing injunctive relief and seeking dismissal, defendants raise a more serious question concerning plaintiffs' right to maintain this action. Although citing no pertinent authority, defendants insist that the Voting Rights

---

3. The New York Election Law, § 39, provides for the appointment of four inspectors of election in every election district of the State, whose term in cities shall be one year from the first day of September. They, along with clerks or custodians of voting machines, are the employees of the local Boards of Election who actually supervise the polling places on primary and general election days and also at the times fixed for registration of prospective voters. They are paid a fixed daily fee for the several days during the year on which they serve. In the City of New York they are appointed by the New York City Board of Elections "from the list submitted by the chairman of the county committee or by such person as the rules of the party may provide", Election Law § 42, with each of the major political parties naming two of the four in each election district. The Election Law provides for their duties, qualifications, appointment, examination as to qualifications, oath of office, certificate of appointment, removals, vacancies and transfer. Election Law § 39, et seq.

4. The defendants Larkin, Duberstein and Martinez, constituting the Board of Elections of the City of New York, although served, have not appeared.

5. The Troy affidavit also avers "that no persons having political appointments who are friendly to Plaintiffs have lost their jobs as the plaintiffs or the newspaper article would have the Court believe."

Act affords plaintiffs no remedy in this case.

Defendants appear to be correct in that contention. In Powell v. Power, 320 F.Supp. 618 (S.D.N.Y.1970), aff'd 436 F.2d 84 (2 Cir. 1970), the plaintiffs sought injunctive relief to void a party primary election for the office of United States Representative, relying in part on the Voting Rights Act. Specifically, the plaintiffs in *Powell* claimed that under 42 U.S.C. §§ 1971 and 1973 the court was authorized to set aside the primary election and grant other relief from claimed irregularities on the part of State election officials which caused the defeat of the contesting candidate Powell. Then District Judge (now Circuit Judge) Mansfield rejected that contention out of hand, after noting that the voting rights statutes "were enacted to banish *racial* discrimination in voting and to implement Fifteenth Amendment guarantees." 320 F.Supp. at 621; emphasis supplied. In *Powell,* as clearly is the case here, "there is neither a claim nor any evidence of any racial discrimination in the primary election here under attack." *Id.*[6]

In affirming Judge Mansfield's ruling limiting the applicability of the Voting Rights Act to cases of racial discrimination, the Court of Appeals, per Kaufman, J., took note of the drastic consequences of "so sweeping and novel a conception, one apparently never before asserted, so far as reported cases reveal." 436 F.2d at 86. As the court went on to say (*id.*):

> Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state

and federal law. Absent a clear and unambiguous mandate from Congress, we are not inclined to undertake such a wholesale expansion of our jurisdiction into an area which, with certain narrow and well defined exceptions, has been in the exclusive cognizance of the state courts. [Footnote omitted.]

In light of the foregoing, it is plain that plaintiffs' application for injunctive relief under 42 U.S.C. § 1971 et seq., must be denied.

Turning now to defendants' cross-motion to dismiss the complaint, in view of the broad jurisdiction conferred on a federal court under 28 U.S.C. § 1343, it is necessary to determine whether "it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims." Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2 Cir. 1970). Aside from the voting rights statutes cited in the complaint, the only other federal statutes which could conceivably support a right of action in a federal court are the civil rights enactments, 42 U.S.C. §§ 1983 and 1985. While equitable relief is possible under § 1983, the sole remedy provided by § 1985 is "an action for the recovery of damages"—a remedy plaintiffs do not seek.

Examining this complaint with the greatest liberality, no claim is stated under § 1983. The gist of plaintiff Newell's claim is that she is being unlawfully dismissed without cause as an election inspector before the expiration of her one-year term in retaliation for her continued loyalty to plaintiff Delaney. The gist of plaintiff Delaney's claim is that the dismissal of experienced (and presumably loyal) election inspectors in his congressional district, to be replaced by strangers, will "impede a proper, expeditious and lawful voter turnout" and

6. The only cases cited by plaintiffs, i. e., United States v. Manning, 215 F.Supp. 277 (W.D.La.1963), and United States v. McLeod, 385 F.2d 734 (5 Cir. 1967), involved claims of official interference to

prevent Negroes from registering so as to defeat their right to vote in elections being held in Louisiana and Alabama— precisely the type of situation § 1971 et seq. was enacted to remedy.

thus be detrimental to his candidacy. Accepting as true the complaint allegations that these actions of defendants are being accompanied by publicized threats of political retaliation against patronage jobholders, the complaint falls far short of stating any claim of a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws", the sole basis for relief under § 1983.

Even assuming defendants may be regarded as acting "under color of" State law, i. e., the New York Election Law, as defined by the Supreme Court in United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1940), and confirmed in Monroe v. Pape, 365 U.S. 167, 184–187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960), there is wholly absent any factual showing of deprivation of a constitutional right. Certainly there is no constitutional right to be an election inspector nor to be free from dismissal in violation of State law. "Mere violation of a state statute does not infringe the federal Constitution." Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944). If, as plaintiffs claim, election inspectors such as plaintiff Newell are being dismissed in violation of the Election Law, their proper remedy would be to complain to the State courts.[7]

Unquestionably "the right to participate through the primary in the choice of representatives in Congress [is] a right clearly secured by the Constitution. . . ." United States v. Classic, supra, 313 U.S. at 323, 61 S.Ct. at 1042. But plaintiff Delaney's theory of constitutional deprivation is no more substantial than plaintiff Newell's. No factual allegations are visible in the complaint from which it might be reasonably inferred that voting rights of eligible citizens in the 9th Congressional District are in jeopardy. Certainly speculative fears about future inadequacies of newly appointed election inspectors "unfamiliar" with their election districts are not sufficient to warrant federal judicial interference. As recently pointed out in this Circuit, "States have broad authority, absent valid congressional legislation, to establish rules regulating the manner of conducting both primary and final elections . . . . The New York Election Law does not inhibit entry into the political arena, deny the right to vote, or debase the weight of some votes." New York State Democratic Party v. Lomenzo, 460 F.2d 250 at 251 (2 Cir., 1972). In this situation, the Election Law makes it clear that "[n]o person shall be appointed . . . an inspector of election . . . who does not possess a general knowledge of the duties of the office . . . ." Election Law, § 39, subd. 3.

Accordingly, plaintiffs' motion for a temporary restraining order is denied and the cross-motion of defendants Troy and Watkins to dismiss the complaint is granted.

So ordered.

7. There is serious question whether plaintiffs are correct in their interpretation of § 45 of the New York Election Law. The New York Supreme Court long ago held that it authorized proper party officials to request the Board of Elections to remove without cause appointed election officers of the party prior to a primary election, even though the statute did not refer to a primary election. Application of Harvey, 138 Misc. 837, 246 N.Y.S. 152 (Sup.Ct.1929). Section 45 now does so. And, as defendants point out, it expressly provides that "It shall be the duty of the board making the appointment of an election officer, to remove forthwith such officer, without preferring any charges and without notice to such officer, upon the written request of the official of the political party who certified the name of such election officer, or his successor." It is not disputed that such a notice has been sent.