**Aida PEREZ GONZALEZ et al.,**
**Plaintiffs,**

v.

**Guillermo IRIZARRY, Chairman of the**
**Council on Higher Education, et al.,**
**Defendants.**

**Civ. No. 74–1220.**

United States District Court,
D. Puerto Rico.

Dec. 23, 1974.

944

Quetglas, Vazquez & Subira, San Juan, P. R., for plaintiffs.

Jose A. Andreu Garcia, Hato Rey, P. R., Juan A. Arill, Rio Piedras, P. R., Geigel, Silva, Soler Favale & Arroyo, Santurce, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

The facts of this case are the following: The University of Puerto Rico is a State instrumentality created by Act No. 1 of January 20, 1966, as amended, (hereinafter referred to as the new Law). It is an organic system of higher education, composed at the present time of the Rio Piedras University Campus, the Mayaguez University Campus, the Medical Science University Campus and the Administration of Regional Colleges. Title 18, Laws of Puerto Rico Annotated, Section 603.

The Council on Higher Education (hereinafter CHE), is the governing board composed of the Secretary of Education and eight (8) other members who are appointed by the Governor with the advice and consent of the Senate of Puerto Rico, who hold office until their successors are appointed and qualify. Title 18, Laws of Puerto Rico Annotated, Section 602.

CHE is empowered by Act No. 1 of January 20, 1966, as amended, to approve the General University Regulations, the Student Regulation for each campus, the retirement regulations, and any other regulation of general application, Title 18, Laws of Puerto Rico Annotated, Section 602(e)(5). It also has jurisdiction on appeals taken against decisions of the President and the University Board.

The new University Law established an Academic Senate at each of the University campuses and when the Council so determines it, at other autonomous institutional units as they deem advisable to create in the future. These Academic Senates are legislative bodies constituted by law; the Chancellor or Director of the corresponding institutional unit will preside it; the Deans, the library Director of the corresponding institutional unit and the President of the University, all the aforementioned, in an ex officio capacity, are members as are the representatives elected by the corresponding faculty from among its permanent members. It was prescribed by law that the elected members of the Academic Senate shall be at least twice that of the ex officio members, and that the General University Regulations shall determine the number, manner of election, and tenure of the senators. Title 18, Laws of Puerto Rico Annotated, Section 610(a), (b)(1) to (4) and (c).

The Academic Senates are the official forum of the academic community for the discussion of the general problems dealing with the proper functioning of the University and of the subject matters within its jurisdiction. Title 18, Laws of Puerto Rico Annotated, Section 610(d) (1) to (11).

Prior to the enactment of the new Law there were in operation two Academic Senates created by resolution of

the predecessor of CHE. The new University law, set up the Academic Senates as legislative bodies. CHE approved Certification number 52, Series 1965–66 for the constitution of the Academic Senates established by law. Certification No. 52, Series 1965–66, as amended, regulates the process for the selection of the elected members representing the faculty in the Academic Senates. Certification No. 96, Series 1973–74, sets limits of two consecutive two year terms as the number of terms that an elected senator can serve at the Academic Senates. Certification No. 24, Series 1974–75, declared valid the election of academic senators to serve in the Academic Senates of 1974–76 that had served more than two terms if their election was effectuated prior to the enactment of Certification No. 96, Series 1973–74, and limits to a maximum of two terms, of two years duration, to serve in the Academic Senates in the case of 1974–76 academic senators that have yet to be elected.

Anticipating the elections that were to be held around April 1974, some professors from the School of Education urged their Dean to consult the President of the University to determine if there was any limit to the number of terms which could be served in the Academic Senates. These professors wanted to nominate professor Esther Seijo de Zayas to represent the Faculty of Education.

The President of the University in his answer claimed that Article 14, Section 11, Chapter II of the University By Laws that had to do something with the organization and functioning of the Academic Senates under the old University Law was in force, concluded that none of the elected members of the Academic Senate can serve for more than three consecutive terms and that when a person holds that position because he was elected to fill a vacancy, he can be a candidate in only two subsequent elections. Not satisfied with the President's ruling the professors appealed to the Council.

Certification No. 96, Series 1973–74, revoked the President's interpretation.

Professor Aida Perez Gonzalez in her own name, and in a petition signed by other professors-senators, asked for a reconsideration of Certification No. 96 on the grounds of discriminatory application. No answer was received to this appeal.

On November 5, 1974, plaintiffs filed their complaint asking for a temporary restraining order.

Plaintiffs attack the validity of Certification No. 96, Series 1973–74, and Certification No. 24, Series 1974–75, issued by defendants members of the Council of Higher Education of the University of Puerto Rico, on the grounds that they are discriminatory on their face and application, and that such certifications constitute an undue restraint to their freedom of association and expression, and that in such restriction, they are denied the equal protection of the laws. In their oral arguments and briefs they also invoke the right of political freedom and due process under the Fourteenth Amendment.

■ Before their claims can be considered, the proper standard for testing both certifications must be determined. Under the traditional or restrained review test, a person assailing a legislative or administrative classification on equal protection grounds has the burden of showing that it has no rational and substantial relationship to a valid objective of the rule making body. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1947). But if the classification is based upon a "suspect" criterion or affects a "fundamental" right, the burden shifts to the rule-maker to show that it is the least drastic method of promoting a "compelling" interest. Shapiro v. Thompson, 394 U.S. 618, 637–638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Under the analysis suggested by the Supreme Court in these three cases, the interest urged in support of a classification should be considered only after making the initial decision as to whether a suspect criterion or fundamental right is

present. Rivera v. Chapel, 493 F.2d 1302 (1 Cir. 1974).

From plaintiff's allegations in the complaint, it appears that the Academic Senates of each of the different campuses were created by virtue of a statute of the Commonwealth of Puerto Rico, Act No. 1 of January 20, 1966 (18 L.P.R.A., Sections 601–614). Section 610(b) of the Act prescribes the guidelines for the composition of each Academic Senate. Thus, plaintiffs' rights to vote and participate as nominees in the elections for the members of the Academic Senate of the Rio Piedras Campus are derived solely from a local statute; no federal statute is involved.

■ The protection extended to citizens of the United States by the privilege and immunities clause does not include rights pertaining and derived solely from the relationship of the citizen and his state established by state law. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed.2d 497. We are unable to equate the right to vote and participate as a nominee in the elections for the members of the Academic Senate to "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042. Neither are we able to equate the right to vote for the members of the Academic Senates of the University of Puerto Rico to the right of political freedom and association inherent in state and Federal citizenship. Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481. No parallel is to be found between the rights granted to plaintiffs under the University of Puerto Rico statute and their freedom of expression and association guaranteed by the Constitution of the United States.

In summary, plaintiffs have gone no farther in their briefs and complaint than to contend that their constitutional and statutory rights were violated without setting forth any facts from which we can prima facie determine that a fundamental right under the Laws or Constitution of the United States is present in this case. Rivera v. Chapel, supra. For this reason, the traditional or "restrained review" doctrine is the proper standard for testing the certifications assailed by plaintiffs upon the facts alleged in this case.

■ The applicable criteria are familiar and well established. A legislative measure will be found to deny equal protection only if "it is without any reasonable basis, and therefor purely arbitrary." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377. It is not enough that the measure results incidentally "in some inequality", or that it is not drawn "with mathematical nicety", ibid.; the statutory classification must instead cause "different treatments . . . so disparate, relative to the difference in classification, as to be wholly arbitrary." Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660, 665.

"The Constitution does not require that the legislative power be exercised only after all the possible interests of those affected have been reflected into the legislators' decision. 'The Fourteenth Amendment permits the states wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.' McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed. 393 (1960)." Rivera v. Chapel, supra.

■ As it appears from the complaint and the exhibits attached therein, the goal of Certification No. 96 is to achieve a wider participation of the members of

the academic community in the consideration of those problems concerning the proper functioning of the University and of matters within its jurisdiction. The limitation of the consecutive terms for which a member can be elected is a rational means of achieving such a goal. *Cf.* Rivera v. Chapel, supra.

Certification No. 24 (1974–75), was adopted after "some of the Chancellors brought up the matter that in their respective campuses there had already been elected to the Senate members for a third consecutive term." Under these circumstances, the Council had the alternative to order new election processes for those cases, following the rules established by its Certification.

However, by request of the Chancellors, and due to the fact that the number of members elected was minimal, it was decided that their election was valid. It was, therefore, approved that the rulings given in Certification 96 would apply prospectively to all those persons to be elected after the date of the emission of Certification 96. The purpose of this ruling is clearly understandable. It pretended to avoid the protest, irritation and dissatisfaction of those members already elected, as well as of those members of the academic community that have voted for them. It cannot be said that such a measure is wholly irrational or arbitrary.

Plaintiffs' due process claim fares no better. The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. From the facts alleged in the complaint we must conclude that no deprivation of liberty or property protected by the Due Process Clause of the Fourteenth Amendment have been stated. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

Whether defendant's action were "ultra-vires" or not, or if such actions

constituted or not an erroneous or mistaken performance of their statutory duty, is not for this Court to decide under the facts alleged in the complaint, this is a matter solely for the Puerto Rican courts. Rivera v. Chapel, supra.

For the above stated reasons the Court now orders that the motion to dismiss be granted and judgment entered dismissing the action for want of jurisdiction.

It is so ordered.