In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 20-1928

CLINTON A. KRISLOV and MICHAEL POWERS,

*Plaintiffs-Appellants*,

*v.*

KAREN A. YARBROUGH, Clerk of Cook County, Illinois, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20 C 469 — **Virginia M. Kendall**, *Judge*.

———————

ARGUED FEBRUARY 18, 2021 — DECIDED FEBRUARY 22, 2021

———————

Before EASTERBROOK, WOOD, and ST. EVE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In March 2020 Clinton Krislov sought to run in the Democratic primary for a position on the Supreme Court of Illinois. To get on the ballot he needed 5,050 valid signatures, or 0.4% of the votes cast in the same district for the same party's candidate in the most recent gubernatorial election. 10 ILCS 5/7-10(h). He submitted about 9,500 signatures, but many were ruled invalid and his total fell about 100 short. (Six other candidates passed the

mark.) Krislov could have protested the election officials' decision in state court, which is required by law to render a prompt decision. 10 ILCS 5/10-10.1(a). Instead he sued in federal court, contending that Illinois violated the Constitution by not giving him the benefit of the doubt. Krislov contends that even professional document examiners have an error rate in authenticating (or not) signatures purporting to be those of registered voters, and that falling 100 signatures short of 5,050 is within the margin of error for document examiners. Krislov also observed that the people who examine signatures in Illinois are not professionals and doubtless have higher error rates (though in a large sample false negatives and false positives may offset).

The district court saw this as a state-law challenge to a state-law requirement, which Krislov had forfeited by not using his state remedies. The judge observed that "close enough for government work" is not an available doctrine in Illinois, which requires candidates to submit all of the required signatures. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929 ¶31 (S. Ct. Ill. Mar. 16, 2015). Someone worried about the inevitable errors in examining signatures can gather more. Instead of stopping with 0.7% of the votes for the Democratic candidate in the last race for Governor, Krislov could have gathered 1% of that number, the better to ensure that the signatures deemed valid met the 0.4% threshold. The Supreme Court has held that a state does not violate the Constitution by requiring a would-be candidate to present signatures equal to 5% of the total electorate. *Jenness v. Fortson*, 403 U.S. 431 (1971). A requirement of 0.4% of one party's turnout in an election is *much* lower than 5% of all registered voters, so a candidate can't have a constitutional objection to a state law that may

induce someone to gather 1% of the party's votes in a recent election. The federal Constitution does not require states to ensure that their laws are accurately administered. An error of state law is just that—an error of state law. See, e.g., *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Davis v. Scherer*, 468 U.S. 183, 192–96 (1984); *Nordlinger v. Hahn*, 505 U.S. 1, 16 n.8 (1992).

By the time the case had been briefed and argued in this court, the election was over. That poses the question whether the suit, which seeks only injunctive relief, is moot. Krislov contends that there is a "public interest" exception to the requirement that a suit remain justiciable at all times, but he does not cite any federal source for this supposed exception. Accurate adjudication always is in the public interest—as is accurate administration of state law—but that does not mean that federal courts can proceed even if the plaintiff lacks standing or the proposed remedy would not redress the plaintiff's injury. State courts may be authorized to act in the absence of a live controversy; federal courts are not.

Consider *Carney v. Adams*, 141 S. Ct. 493 (2020). The Supreme Court granted review to resolve a dispute about the constitutionality of Delaware's requirement that its judicial system reflect partisan balance—that no more than a bare majority of judges belong to one political party and that, for three courts, all judges be either Democrats or Republicans. But the Court did not reach the merits. James Adams, the plaintiff, switched his registration to Independent so that he could try to contest the state's rules. But he could not show any prospect of appointment to any of the courts in the foreseeable future, no matter his party affiliation, so the Court held that he lacks standing and dismissed the suit without

reaching the merits. If there were a "public interest" exception to the justiciability rules, the Court would have decided the constitutionality of Delaware's laws. But there isn't, so it didn't.

Krislov, unlike Adams, is ready, willing, and able to run for judicial office in the future. But whether he will be affected by the 0.4% signature requirement (or the means by which Illinois administers it) is uncertain. To contest that requirement now, in the absence of a fight about how it affects a run for office, Krislov must satisfy the requirements of the doctrine under which a dispute does not become moot if it is capable of repetition yet bound to evade review. See, e.g., *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988). He says that this dispute is capable of repetition because hundreds of candidates need to gather signatures in every election cycle, and some of those signature-gathering efforts are sure to fall just short. But the question is not whether the issue will matter to *someone*, but whether it will matter *to him, in particular*. See *Weinstein v. Bradford*, 423 U.S. 147 (1975).

For this dispute to recur with respect to Krislov, he has to run again. We accept his word that he will do so—though there may not be another opening in the First District, where Krislov resides, until 2028. (Justices of the Supreme Court of Illinois are elected from districts for ten-year terms. The term of one Justice from the First District expires in 2022, but she is eligible to run for retention, and if she gathers enough votes her term will be extended until 2032.) We also accept Krislov's assertion that other candidates, or their supporters, are bound to contend that he has not gathered enough valid signatures. Still, for the current dispute to recur, Krislov would have to stop short of gathering enough signatures

(say, 1% of the number cast for a Democrat in the First District in the 2026 gubernatorial election) to be confident of surviving a challenge—and, what's more, the outcome of his effort would have to come *so* close to the line (say, 0.4% ± 0.02%) that it would be within the margin of error to be expected if all signatures were to be vetted by professional document examiners. Krislov has not tried to estimate the chance that this would occur. That likelihood seems to us as low as the probabilities deemed insufficient in *Carney* and *Weinstein*.

Suppose that the signature count in Krislov's next candidacy again comes quite close to the 0.4% mark. The exception to the mootness rule also requires that a legal dispute be incapable of review when it next arises. Contests to the number of signatures raised to get on the ballot are routinely resolved before ballots are printed. The dispute about Krislov's own candidacy was resolved in 2020 by the Cook County Officer's Electoral Board with time to spare, and Krislov was entitled to prompt review in state court. He told us at oral argument that he abjured state court because he was sure that he would lose. Yet having a dim view of one's prospects differs from inability to obtain timely review.

Because the 2020 election season is over, Krislov is entitled to decision in federal court only if the legal issues that arose in 2020 are both capable of repetition with respect to Krislov personally and bound to evade judicial review if they recur. He has not satisfied either of these requirements, so this litigation is moot. We vacate the judgment of the district court and remand with instructions to dismiss for lack of a justiciable controversy.