## SNOWDEN *v.* HUGHES ET AL.

No. 57.   Argued December 13, 1943.—Decided January 17, 1944.

*Mr. William R. Ming, Jr.,* with whom *Mr. Joseph E. Snowden* was on the brief, for petitioner.

*Mr. William C. Wines,* Assistant Attorney General of Illinois, with whom *Mr. George F. Barrett,* Attorney General, was on the brief, for Edward J. Hughes et al.; and *Messrs. Isaac E. Ferguson* and *Herbert M. Lautmann* submitted for Robert E. Straus et al.,—respondents.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Petitioner, a citizen of Illinois, brought this suit at law in the District Court for Northern Illinois against respondents, citizens of Illinois, to recover damages for infringement of his civil rights in violation of the Fourteenth Amendment and 8 U. S. C. §§ 41, 43, and 47 (3). He alleged that the suit was within the jurisdiction of the court as a suit arising under the Constitution and laws of the United States, 28 U. S. C. § 41 (1), a suit for the recovery of damages for injury to property and for deprivation of

a right or privilege of a citizen of the United States, 28 U. S. C. § 41 (12), and a suit for the recovery of damages for deprivation, under color of state law, custom, regulation or usage, of a right or privilege secured by the Fourteenth Amendment, 28 U. S. C. § 41 (14).

The complaint makes the following allegations. Petitioner was one of several candidates at the April 9, 1940, Republican primary election held in the Third Senatorial District of Illinois pursuant to Ill. Rev. Stat. (State Bar Assn. Ed.), Ch. 46, Art. 8 for nominees for the office of representative in the Illinois General Assembly. By reason of appropriate action taken respectively by the Republican and Democratic Senatorial Committees of the Third Senatorial District in conformity to the scheme of proportional representation authorized by Ill. Rev. Stat., Ch. 46, § 8–13, two candidates for representative in the General Assembly were to be nominated on the Republican ticket and one on the Democratic ticket. Since three representatives were to be elected, Ill. Const., Art. IV, §§ 7 and 8, and only three were to be nominated by the primary election, election at the primary as one of the two Republican nominees was, so the complaint alleges, tantamount to election to the office of representative.

The votes cast at the primary election were duly canvassed by the Canvassing Board of Cook County, which, as required by Ill. Rev. Stat., Ch. 46, § 8–15, certified and forwarded to the Secretary of State a tabulation showing the results of the primary election in the Third Senatorial District. By this tabulation the Board certified that petitioner and another had received respectively the second highest and highest number of votes for the Republican nominations. Ill. Rev. Stat., Ch. 46, § 8–13 requires that the candidates receiving the highest votes shall be declared nominated.

Respondents Hughes and Lewis, and Henry Horner whose executors were joined as defendants and are re-

4

spondents here, constituted the State Primary Canvassing Board for the election year 1940. By Ill. Rev. Stat., Ch. 46, § 8–15 it was made their duty to receive the certified tabulated statements of votes cast, including that prepared by the Canvassing Board of Cook County, to canvass the returns, to proclaim the results and to issue certificates of nomination to the successful candidates. Such a certificate is a prerequisite to the inclusion of a candidate's name on the ballot. Ill. Rev. Stat., Ch. 46, § 10–14. Acting in their official capacity as State Primary Canvassing Board they issued, on April 29, 1940, their official proclamation which designated only one nominee for the office of representative in the General Assembly from the Third Senatorial District on the Republican ticket and excluded from the nomination petitioner, who had received the second highest number of votes for the Republican nomination.

After setting out these facts the complaint alleges that Horner and respondents Hughes and Lewis, "willfully, maliciously and arbitrarily" failed and refused to file with the Secretary of State a correct certificate showing that petitioner was one of the Republican nominees, that they conspired and confederated together for that purpose, and that their action constituted "an unequal, unjust and oppressive administration" of the laws of Illinois. It alleges that Horner, Hughes and Lewis, acting as state officials under color of the laws of Illinois, thereby deprived petitioner of the Republican nomination for representative in the General Assembly and of election to that office, to his damage in the amount of $50,000, and by so doing deprived petitioner, in contravention of 8 U. S. C. §§ 41, 43 and 47 (3), of rights, privileges and immunities secured to him as a citizen of the United States, and of the equal protection of the laws, both guaranteed to him by the Fourteenth Amendment.

The District Court granted motions by respondents to strike the complaint and dismiss the suit upon the grounds, among others, that the facts alleged did not show that the plaintiff had been deprived of any right, privilege or immunity secured to him by the Constitution or laws of the United States, and that, the alleged cause of action being predicated solely upon a claim that state officers had failed to perform duties imposed upon them by state law, their failure was not state action to which the prohibitions of the Fourteenth Amendment are alone directed, and hence was not sufficient to establish an infringement of rights secured to petitioner by the Fourteenth Amendment. The Court of Appeals for the Seventh Circuit affirmed, 132 F. 2d 476, holding on authority of *Barney* v. *City of New York,* 193 U. S. 430, that the action of the members of the State Board, being contrary to state law, was not state action and was therefore not within the prohibitions of the Fourteenth Amendment.

In substance petitioner's alleged cause of action is that the members of the State Primary Canvassing Board, acting as such but in violation of state law, have by their false certificate or proclamation and by their refusal to file a true certificate deprived petitioner of nomination and election as representative in the state assembly. To establish a cause of action arising under the Constitution and laws of the United States within the jurisdiction of the District Court as prescribed by 28 U. S. C. § 41 (1), (12) and (14), he relies particularly on the provisions of the Fourteenth Amendment supplemented by two sections of the Civil Rights Act of 1871, 8 U. S. C. §§ 43, 47 (3).[1]

---

[1] 8 U. S. C. § 41, on which petitioner also relies, guaranties to all persons within the United States "the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." As pointed out later in this opinion, no claim of discrimination based on race is made.

Section 43 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of and State . . ., subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . for redress." Section 47 (3), so far as now relevant, gives an action for damages to any person "injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States," by reason of a conspiracy of two or more persons entered into "for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." It is the contention of petitioner that the right conferred on him by state law to become a candidate for and to be elected to the office of representative upon receipt of the requisite number of votes in the primary and general elections, is a right secured to him by the Fourteenth Amendment, and that the action of the State Primary Canvassing Board deprived him of that right and of the equal protection of the laws for which deprivation the Civil Rights Act authorizes his suit for damages.

Three distinct provisions of the Fourteenth Amendment guarantee rights of persons and property. It declares that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The protection extended to citizens of the United States by the privileges and immunities clause includes those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but does not include rights pertaining

to state citizenship and derived solely from the relationship of the citizen and his state established by state law. *Slaughter-House Cases,* 16 Wall. 36, 74, 79; *Maxwell* v. *Bugbee,* 250 U. S. 525, 538; *Prudential Insurance Co.* v. *Cheek,* 259 U. S. 530, 539; *Madden* v. *Kentucky,* 309 U. S. 83, 90–93. The right to become a candidate for state office, like the right to vote for the election of state officers, *Minor* v. *Happersett,* 21 Wall. 162, 170–78; *Pope* v. *Williams,* 193 U. S. 621, 632; *Breedlove* v. *Suttles,* 302 U. S. 277, 283, is a right or privilege of state citizenship, not of national citizenship which alone is protected by the privileges and immunities clause.

More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause. *Taylor & Marshall* v. *Beckham,* 178 U. S. 548. Only once since has this Court had occasion to consider the question and it then reaffirmed that conclusion, *Cave* v. *Newell,* 246 U. S. 650, as we reaffirm it now.

Nor can we conclude that the action of the State Primary Canvassing Board, even though it be regarded as state action within the prohibitions of the Fourteenth Amendment, was a denial of the equal protection of the laws. The denial alleged is of the right of petitioner to be a candidate for and to be elected to public office upon receiving a sufficient number of votes. The right is one secured to him by state statute and the deprivation of right is alleged to result solely from the Board's failure to obey state law. There is no contention that the statutes of the state are in any respect inconsistent with the guarantees of the Fourteenth Amendment. There is no allegation of any facts tending to show that in refusing to certify petitioner as a nominee, the Board was making any intentional or purposeful discrimination between persons or classes. On the argument before us petitioner

disclaimed any contention that class or racial discrimination is involved. The insistence is rather that the Board, merely by failing to certify petitioner as a duly elected nominee, has denied to him a right conferred by state law and has thereby denied to him the equal protection of the laws secured by the Fourteenth Amendment.

But not every denial of a right conferred by state law involves a denial of the equal protection of the laws, even though the denial of the right to one person may operate to confer it on another. Where, as here, a statute requires official action discriminating between a successful and an unsuccessful candidate, the required action is not a denial of equal protection since the distinction between the successful and the unsuccessful candidate is based on a permissible classification. And where the official action purports to be in conformity to the statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws.

The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, cf. *McFarland* v. *American Sugar Co.*, 241 U. S. 79, 86–7, or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, *Yick Wo* v. *Hopkins*, 118 U. S. 356, 373–4. But a discriminatory purpose is not presumed, *Tarrance* v. *Florida*, 188 U. S. 519, 520; there must be a showing of "clear and intentional discrimination," *Gundling* v. *Chicago*, 177 U. S. 183, 186; see *Ah Sin* v. *Wittman*, 198 U. S. 500, 507–8; *Bailey* v. *Alabama*, 219 U. S. 219, 231. Thus the denial of equal protection by

the exclusion of negroes from a jury may be shown by extrinsic evidence of a purposeful discriminatory administration of a statute fair on its face. *Neal* v. *Delaware,* 103 U. S. 370, 394, 397; *Norris* v. *Alabama,* 294 U. S. 587, 589; *Pierre* v. *Louisiana,* 306 U. S. 354, 357; *Smith* v. *Texas,* 311 U. S. 128, 130–31; *Hill* v. *Texas,* 316 U. S. 400, 404. But a mere showing that negroes were not included in a particular jury is not enough; there must be a showing of actual discrimination because of race. *Virginia* v. *Rives,* 100 U. S. 313, 322–3; *Martin* v. *Texas,* 200 U. S. 316, 320–21; *Thomas* v. *Texas,* 212 U. S. 278, 282; cf. *Williams* v. *Mississippi,* 170 U. S. 213, 225.

Another familiar example is the failure of state taxing officials to assess property for taxation on a uniform standard of valuation as required by the assessment laws. It is not enough to establish a denial of equal protection that some are assessed at a higher valuation than others. The difference must be due to a purposeful discrimination, which may be evidenced, for example, by a systematic under-valuation of the property of some taxpayers and a systematic over-valuation of the property of others, so that the practical effect of the official breach of law is the same as though the discrimination were incorporated in and proclaimed by the statute. *Coulter* v. *Louisville & Nashville R. Co.,* 196 U. S. 599, 607, 609–10; *Chicago, B. & Q. Ry. Co.* v. *Babcock,* 204 U. S. 585, 597; *Sunday Lake Iron Co.* v. *Wakefield,* 247 U. S. 350, 353; *Southern Ry. Co.* v. *Watts,* 260 U. S. 519, 526.[2] Such discrimination may also be shown to be purposeful, and hence a denial of equal protection, even though it is neither sys-

---

[2] See also *Raymond* v. *Chicago Union Traction Co.,* 207 U. S. 20, 36; *Sioux City Bridge Co.* v. *Dakota Co.,* 260 U. S. 441, 447; *Bohler* v. *Calloway,* 267 U. S. 479, 489; *Cumberland Coal Co.* v. *Board of Revision,* 284 U. S. 23, 25, 28; cf. *Great Northern Ry. Co.* v. *Weeks,* 297 U. S. 135, 139.

10

tematic nor long-continued.  Cf. *McFarland* v. *American Sugar Co., supra.*

The lack of any allegations in the complaint here, tending to show a purposeful discrimination between persons or classes of persons is not supplied by the opprobrious epithets "willful" and "malicious" applied to the Board's failure to certify petitioner as a successful candidate, or by characterizing that failure as an unequal, unjust, and oppressive administration of the laws of Illinois.   These epithets disclose nothing as to the purpose or consequence of the failure to certify, other than that petitioner has been deprived of the nomination and election, and therefore add nothing to the bare fact of an intentional deprivation of petitioner's right to be certified to a nomination to which no other has been certified.  Cf. *United States* v. *Illinois Central R. Co.,* 303 U. S. 239, 243.   So far as appears the Board's failure to certify petitioner was unaffected by and unrelated to the certification of any other nominee.   Such allegations are insufficient under our decisions to raise any issue of equal protection of the laws or to call upon a federal court to try questions of state law in order to discover a purposeful discrimination in the administration of the laws of Illinois which is not alleged.   Indeed on the allegations of the complaint, the one Republican nominee certified by the Board was entitled to be certified as the nominee receiving the highest number of votes, and the Board's failure to certify petitioner, so far as appears, was unaffected by and unrelated to the certification of the other, successful nominee.   While the failure to certify petitioner for one nomination and the certification of another for a different nomination may have involved a violation of state law, we fail to see in this a denial of the equal protection of the laws more than if the Illinois statutes themselves had provided that one candidate should be certified and no other.

If the action of the Board is official action it is subject to constitutional infirmity to the same but no greater extent than if the action were taken by the state legislature. Its illegality under the state statute can neither add to nor subtract from its constitutional validity. Mere violation of a state statute does not infringe the federal Constitution. Compare *Owensboro Waterworks Co.* v. *Owensboro,* 200 U. S. 38, 47. And state action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature. *Nashville, C. & St. L. Ry.* v. *Browning,* 310 U. S. 362, 369–70. See also *Coulter* v. *Louisville & Nashville R. Co., supra,* 608–9; *Hayman* v. *Galveston,* 273 U. S. 414, 416; *Iowa-Des Moines Bank* v. *Bennett,* 284 U. S. 239, 244. A state statute which provided that one nominee rather than two should be certified in a particular election district would not be unconstitutional on its face and would be open to attack only if it were shown, as it is not here, that the exclusion of one and the election of another were invidious and purposely discriminatory. Compare *Missouri* v. *Lewis,* 101 U. S. 22, 30, 32; *Yick Wo* v. *Hopkins, supra.*

Where discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights. *McPherson* v. *Blacker,* 146 U. S. 1, 23–4; *Nixon* v. *Herndon,* 273 U. S. 536, 538; *Nixon* v. *Condon,* 286 U. S. 73; see *Pope* v. *Williams, supra,* 634. But the necessity of a showing of purposeful discrimination is no less in a case involving political rights than in any other. It was not intended by the Fourteenth Amendment and the Civil Rights Acts that all matters formerly within the exclusive cognizance of the states should become matters of national concern.

A construction of the equal protection clause which would find a violation of federal right in every departure

by state officers from state law is not to be favored. And it is not without significance that we are not cited to and have been unable to find a single instance in which this Court has entertained the notion that an unlawful denial by state authority of the right to state office is without more a denial of any right secured by the Fourteenth Amendment. See *Taylor & Marshall* v. *Beckham, supra,* and authorities cited; *Cave* v. *Newell, supra.* Only once has it been contended here that an unlawful denial by state executive, administrative or legislative authority of the right to state office is for that reason alone a denial of equal protection. *Wilson* v. *North Carolina,* 169 U. S. 586.[3] In rejecting that contention this Court said at pages 594–5:

"In its internal administration the State (so far as concerns the Federal Government) has entire freedom of choice as to the creation of an office for purely state purposes, and of the terms upon which it shall be held by the person filling the office. . . .

"Upon the case made by the plaintiff in error, the Federal question which he attempts to raise is so unfounded in substance that we are justified in saying that it does

---

[3] In *United States* v. *Classic,* 313 U. S. 299, this Court refused to pass on a similar contention as to a refusal to count ballots cast in an election for federal officers. The holding in that case that a refusal to count votes cast, and the consequent false certification of candidates, was a denial of a right or privilege "secured . . . by the Constitution . . . of the United States" was rested on the ground that the right to vote for a federal officer, whether or not it be deemed a privilege of citizens of the United States, see *Twining* v. *New Jersey,* 211 U. S. 78, 97, is a right secured by Art. 1, §§ 2 and 4 of the Constitution. See 313 U. S. at 314–5 and cases cited; *United States* v. *Mosley,* 238 U. S. 383. The Court pointed out that "the indictment on its face does not purport to charge a deprivation of equal protection to voters or candidates," 313 U. S. at 329, and declined to consider whether the facts alleged could constitute such a denial.

not really exist; that there is no fair color for claiming that his rights under the Federal Constitution have been violated, either by depriving him of his property without due process of law or by denying him the equal protection of the laws."

As we conclude that the right asserted by petitioner is not one secured by the Fourteenth Amendment and affords no basis for a suit brought under the sections of the Civil Rights Acts relied upon, we find it unnecessary to consider whether the action by the State Board of which petitioner complains is state action within the meaning of the Fourteenth Amendment. The authority of *Barney* v. *City of New York, supra,* on which the court below relied, has been so restricted by our later decisions, see *Raymond* v. *Chicago Traction Co.,* 207 U. S. 20, 37; *Home Tel. & Tel. Co.* v. *Los Angeles,* 227 U. S. 278, 294; *Iowa-Des Moines Bank* v. *Bennett, supra,* 246–7; cf. *United States* v. *Classic,* 313 U. S. 299, 326, that our determination may be more properly and more certainly rested on petitioner's failure to assert a right of a nature such as the Fourteenth Amendment protects against state action.

The judgment is accordingly affirmed for failure of the complaint to state a cause of action within the jurisdiction of the District Court.

*Affirmed.*

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE FRANKFURTER, concurring:

The plaintiff brought this action in a district court to recover damages claimed to have been suffered at the hands of the defendants as members of the State Primary Canvassing Board of Illinois. The theory of his claim is that the defendants, being in legal effect the State of Illinois, denied to the plaintiff the equal protection of its laws.

14

The crucial allegations charging such a denial are in the following paragraph of the complaint:

"11. That notwithstanding the clear and plain mandates of section 454 and section 456, chapter 46, Illinois Revised Statutes, the defendants Edward J. Hughes and Louie E. Lewis, and the decedent Henry Horner, acting as the State Primary Canvassing Board of Illinois, entered into an understanding and agreement and combined, conspired and confederated together to willfully, maliciously and arbitrarily refuse to designate plaintiff as one of the nominees of the Republican Party for the office of Representative in the General Assembly from the Third Senatorial District of Illinois and to issue their Official Proclamation designating plaintiff as one of the said nominees and to file their proper and correct certificate in the office of the Secretary of State of Illinois showing that plaintiff was one of the nominees of the Republican Party for the Office of Representative in the General Assembly from the Third Senatorial District of Illinois."

I should be silent were the Court merely to hold that as a matter of pleading these allegations are not sufficiently explicit to charge as an arbitrary act of discrimination the concerted and purposeful use by the defendants of their official authority over the election machinery of the State so as to withhold from the plaintiff the opportunity to present himself to the voters of that State "as one of the nominees of the Republican Party" for election to the General Assembly of Illinois. I should be silent even though it were avowed that such a constrained reading of the complaint reflected the most exacting attitude against drawing into the federal courts controversies over state elections. Unless I mistake the tenor of the Court's opinion, the decision is broader than mere inadequacy of pleading.

All questions pertaining to the political arrangements of state governments are, no doubt, peculiarly outside the

domain of federal authority. The disposition of state offices, the manner in which they should be filled and contests concerning them, are solely for state determination, always provided that the equality of treatment required by the Civil War Amendments is respected. And so I appreciate that there are strong considerations of policy which should make federal courts inhospitable toward litigation involving the enforcement of state election laws. But I do not think that the criteria for establishing a denial of the equal protection of the laws are any different in cases of discrimination in granting opportunities for presenting oneself as a candidate for office "as one of the nominees of the Republican Party" than those that are relevant when claim is made that a state has discriminated in regulating the pursuit of a private calling. It appears extremely unlikely that the plaintiff could establish his case. The sole question now is whether, assuming he can make good his allegations, he should be denied the opportunity of a trial to do so.

The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state. See *McGovern* v. *New York*, 229 U. S. 363, 370–1. However, in forbidding a state to "deny to any person within its jurisdiction the equal protection of the laws," the Fourteenth Amendment does not permit a state to deny the equal protection of its laws because such denial is not wholesale. The talk in some of the cases about systematic discrimination is only a way of indicating that in order to give rise to a constitutional grievance a departure from a norm must be rooted in design and not derive merely from error or fallible judgment. Speaking of a situation in which conscious discrimination by a state touches "the plaintiff alone," this Court tersely expressed the governing principle by observing that "we suppose that no one would contend that the plaintiff was given the

equal protection of the laws." *McFarland* v. *American Sugar Co.,* 241 U. S. 79, 86, 87. And if the highest court of a state should candidly deny to one litigant a rule of law which it concededly would apply to all other litigants in similar situations, could it escape condemnation as an unjust discrimination and therefore a denial of the equal protection of the laws? See *Backus* v. *Fort Street Union Depot Co.,* 169 U. S. 557, 571.

But to constitute such unjust discrimination the action must be that of the state. Since the state, for present purposes, can only act through functionaries, the question naturally arises what functionaries, acting under what circumstances, are to be deemed the state for purposes of bringing suit in the federal courts on the basis of illegal state action. The problem is beset with inherent difficulties and not unnaturally has had a fluctuating history in the decisions of the Court. Compare *Barney* v. *City of New York,* 193 U. S. 430, with *Raymond* v. *Chicago Traction Co.,* 207 U. S. 20, *Memphis* v. *Cumberland Telephone Co.,* 218 U. S. 624, with *Home Tel. & Tel. Co.* v. *Los Angeles,* 227 U. S. 278. It is not to be resolved by abstract considerations such as the fact that every official who purports to wield power conferred by a state is *pro tanto* the state. Otherwise every illegal discrimination by a policeman on the beat would be state action for purpose of suit in a federal court.

Our question is not whether a remedy is available for such an illegality, but whether it is available in the first instance in a federal court. Such a problem of federal judicial control must be placed in the historic context of the relationship of the federal courts to the states, with due regard for the natural sensitiveness of the states and for the appropriate responsibility of state courts to correct the action of lower state courts and state officials. See, *e. g.,* *Ex parte Royall,* 117 U. S. 241, 251. Take the present case. The plaintiff complains that he has been denied the equal

protection of the laws of Illinois precisely because the defendants, constituting the State Canvassing Board, have willfully, with set purpose to withdraw from him the privileges afforded by Illinois, disobeyed those laws. To adapt the language of an earlier opinion, I am unable to grasp the principle on which the State can here be said to deny the plaintiff the equal protection of the laws of the State when the foundation of his claim is that the Board had disobeyed the authentic command of the State. Holmes, J., dissenting, in *Raymond* v. *Chicago Traction Co.*, *supra* at p. 41.

I am clear, therefore, that the action of the Canvassing Board taken, as the plaintiff himself acknowledges, in defiance of the duty of that Board under Illinois law, cannot be deemed the action of the State, certainly not until the highest court of the State confirms such action and thereby makes it the law of the State. I agree, in a word, with the court below that *Barney* v. *City of New York*, 193 U. S. 430, is controlling. See Isseks, *Jurisdiction of the Lower Federal Courts to Enjoin Unauthorized Action of State Officials*, 40 Harv. L. Rev. 969. Neither the wisdom of its reasoning nor its holding has been impaired by subsequent decisions. A different problem is presented when a case comes here on review from a decision of a state court as the ultimate voice of state law. See for instance *Iowa-Des Moines Bank* v. *Bennett*, 284 U. S. 239. And the case is wholly unlike *Lane* v. *Wilson*, 307 U. S. 268, in which the election officials acted not in defiance of a statute of a state but under its authority.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE MURPHY concurs, dissenting:

My disagreement with the majority of the Court is on a narrow ground. I agree that the equal protection clause of the Fourteenth Amendment should not be distorted to make the federal courts the supervisor of the state elec-

tions.   That would place the federal judiciary in a position "to supervise and review the political administration of a state government by its own officials and through its own courts" (*Wilson* v. *North Carolina*, 169 U. S. 586, 596)— matters on which each State has the final say.   I also agree that a candidate for public office is not denied the equal protection of the law in the constitutional sense merely because he is the victim of unlawful administration of a state election law.   I believe, as the opinion of the Court indicates, that a denial of equal protection of the laws requires an invidious, purposeful discrimination.   But I depart from the majority when it denies Snowden the opportunity of showing that he was in fact the victim of such discriminatory action.   His complaint seems to me to be adequate to raise the issue.   He charges a conspiracy to wilfully, maliciously and arbitrarily refuse to designate him as one of the nominees of the Republican party, that such action was an "unequal" administration of the Illinois law and a denial to him of the equal protection of the laws, and that the conspiracy had that purpose.   While the complaint could have drawn the issue more sharply, I think it defines it sufficiently to survive the motion to dismiss.

No doubt unconstitutional discriminations against a class, such as those which we have recently condemned in *Lane* v. *Wilson*, 307 U. S. 268, and *Skinner* v. *Oklahoma*, 316 U. S. 535, may be more readily established than a discrimination against an individual *per se*.   But though the proof is exacting, the latter may be shown as in *Cochran* v. *Kansas*, 316 U. S. 255, where a prisoner was prevented from perfecting an appeal.   The criteria are the same whether one has been denied the opportunity to be a candidate for public office, to enter private business, or to have the protection of the courts.   If the law is "applied and administered by public authority with an evil eye and an unequal

hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances" (*Yick Wo* v. *Hopkins*, 118 U. S. 356, 373–374), it is the same as if the invidious discrimination were incorporated in the law itself. If the action of the Illinois Board in effect were the same as an Illinois law that Snowden could not run for office, it would run afoul of the equal protection clause whether that discrimination were based on the fact that Snowden was a Negro, Catholic, Presbyterian, Free Mason, or had some other characteristic or belief which the authorities did not like. Snowden should be allowed the opportunity to make that showing no matter how thin his chances of success may seem.