BEVERLY BANK, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF REVIEW OF WILL COUNTY *et al.*, Defendants-Appellees.

Third District   No. 82—313

Opinion filed August 24, 1983.

Eugene J. Schiltz, Kenneth P. Ross, John L. Gubbins, and Robert S. Atkins, all of Freeman, Atkins & Coleman, Ltd., of Chicago, for appellants.

William W. Kurnik, of Judge, Kurnik & Knight, Ltd., of Park Ridge, for appellees.

JUSTICE BARRY delivered the opinion of the court:
Plaintiff taxpayers appeal from an order granting defendants' motion for judgment on the pleadings and dismissing the complaint in this action for damages arising out of an increase in real property assessments of all industrial and commercial property by the Will

County Board of Review.

According to the allegations of the third amended complaint filed about April 4, 1979, in this cause, which complaint is the basis for the defendants' motion for judgment on the pleadings, the Department of Local Government Affairs of the State of Illinois assigned a tentative multiplier of 1.13 to Will County for the tax year 1978. This multiplier was determined by the Department to be the factor necessary to equalize the Will County assessments at the statutorily required level of 33⅓% of fair cash value.

The pertinent language of the complaint is as follows:

"(18) Commencing approximately in the spring of 1979, and subsequent to receipt of notice from the LGA of a 1978 tentative multiplier of 1.13, the defendant members of the Board of Review conspired and engaged in a concert of action to unlawfully increase the assessed valuation of industrial and commercial real estate and personal property, *for the purpose and with the intent* of eliminating the imposition of a state multiplier of 13% on residential, farm and other real estate owned by preferred taxpayers.

(19) As part of and in furtherance of said conspiracy and concert of action, defendants engaged in the following course of conduct:

(a) In August 1979, without any classification of real property ordinance of the County Board of Will County and in violation of Section 20a of the Revenue Act, Ill. Rev. Stat. (1979) Ch. 120, sec. 501a, the Board of Review applied a uniform formula and/or percentage factor, across the board, to all industrial and commercial real property in Will County, for the purpose of increasing the assessment on said real property and thereby attempting to eliminate the effect of the 1.13 multiplier tentatively imposed by the LGA as to all other types of property owners.

(b) In August 1979, the Board of Review increased assessments ten percent (10%), across the board, on all taxable personal property in Will County, for the purpose of alleviating the effect of the 1.13 multiplier tentatively imposed by the LGA as to all other types of property owners.

(c) On or about September 24, 1979, the members of the Board of Review caused to be issued to each owner of commercial and/or industrial real property and each owner of taxable personal property in Will County a 'Notice of the Revised Assessment for 1978.' Said notices informed each such

taxpayer of the increase in assessments imposed by the Board of Review.

(20) The defendant Board of Review and its members arbitrarily and discriminatorily, and with neither legal classifications, guidelines, nor approval by the County Board of Will County, increased the 1978 assessments only as to commercial and industrial real estate and personal property owned by plaintiffs and members of the plaintiff class, contrary to state law and in violation of the constitutional rights of plaintiffs and the plaintiff class to due process and equal protection under the laws as provided in the Fourteenth Amendment to the United States Constitution:

(a) Without imposing increased assessments on any other taxable real estate in Will County;

(b) *With the purpose and intent* of imposing an unlawful financial burden on plaintiffs and members of the plaintiff class, so that other taxpayers would experience no tax increase ***;

(c) Without rational basis nor lawful reason for the selection of plaintiffs or plaintiff class members as those who would bear said financial burden;

(d) Without any rational relationship between said increased assessment and the actual assessed value of the property of plaintiffs and the plaintiff class;

(e) Without providing any meaningful hearing before the Board of Review.

(21) On or about December 1979, tax bills were sent to all taxpayers in Will County, including the taxpayers whose taxes were calculated upon the assessments which were unlawfully revised. Payments of said tax bills were to be made by January 31, 1980 and payments have been received by the Treasurer of Will County.

(22) The violation of the constitutional rights of plaintiffs and plaintiff class as aforesaid constitutes *an intentional deprivation of the civil rights* of plaintiff and plaintiff class by defendants under color of the laws of the State of Illinois and the authority of the Board of Review of Will County, in violation of the Civil Rights Act of 1871, 42 U.S.C. sec. 1983.

(23) The conspiracy of the defendant members of the Board of Review, *wilfully* acting in concert, to arbitrarily and discriminatorily increase the 1978 assessments of plaintiffs and the plaintiff class as heretofore described is in violation of the due

process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States." (Emphasis added.)

Plaintiffs filed a class action in the United States District Court for the Northern District of Illinois, seeking damages pursuant to the Civil Rights Act (42 U.S.C. sec. 1983), as indicated, which authorizes a cause of action for damages for any "deprivation of rights, privileges or immunities secured by the Constitution and laws ***."

Section 1983 was originally adopted under the colorful designation, the Ku Klux Act of April 20, 1871, section 1, for the express purpose of enforcing the provisions of the fourteenth amendment, and the congressional debates made clear that the lawless activities of the Ku Klux Klan in the South at that time were intended to be subject to Federal remedy. In discussing the history of section 1983, Justice Douglas in *Monroe v. Pape* (1961), 365 U.S. 167, 171-72, 5 L. Ed. 2d 492, 497, 81 S. Ct. 473, 476, said:

"There can be no doubt at least since *Ex parte Virginia*, 100 U.S. 339, 346-347, 25 L. Ed. 676, that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it. *** The question with which we now deal is the narrower one of whether Congress, in enacting section 1979 [now 1983], meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position. *** We conclude that it did so intend."

Accordingly, section 1983 provides a remedy where public officials fail to execute the provisions of State law, thereby denying citizens the guarantees of the fourteenth amendment otherwise afforded to them.

While this suit was pending in Federal court, the United States Supreme Court ruled that actions brought under section 1983 alleging unconstitutional administration of State tax systems must be initially brought in a State court. (*Fair Assessment in Real Estate Association, Inc. v. McNary* (1981), 454 U.S. 100, 70 L. Ed. 2d 271, 102 S. Ct. 177.) As a consequence of that decision, the parties to this action agreed to transfer this cause to the circuit court of Will County. It is not disputed that Illinois courts have concurrent jurisdiction with Federal courts to hear claims founded upon alleged violations of section 1983. (*Bohacs v. Reid* (1978), 63 Ill. App. 3d 477, 379 N.E.2d 1372; *Alberty v. Daniel* (1974), 25 Ill. App. 3d 291, 323 N.E.2d 110.) After the transfer, defendants filed a motion for judgment on the pleadings

which was granted by the trial court, as aforesaid.

Plaintiffs first argue that the trial court erred in basing its ruling on the doctrine that plaintiffs were required to exhaust their administrative remedies before bringing suit under the Federal statute. Defendants agree that the exhaustion doctrine is not applicable to actions under section 1983 of the Civil Rights Act and assert further that they do not rely upon that doctrine. (See *Patsy v. Board of Regents* (1982), 457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557.) We think that a careful reading of the trial court's memorandum opinion indicates that the trial court did not apply the exhaustion doctrine but rather considered several exhaustion cases in determining whether Illinois law afforded plaintiffs due process. Accordingly, we will not belabor the doctrine of exhaustion of administrative remedies by further consideration.

Plaintiffs also assert that the trial court erred when it failed to find that defendants denied plaintiffs their Federal constitutional right to due process. This issue is quite simply presented to us. Section 108 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 589(5)) provides that the assessment of any class of property shall not be increased until the board of review has given the owners of the property affected an opportunity to be heard within 20 days following publication of notice of the proposed increase. Defendants admit that they did not comply with the requirements of the statute, but they argue that every violation of a State statute does not automatically rise to the level of deprivation of a constitutional right.

The statutory basis for plaintiffs' claim is section 1983 (42 U.S.C. sec. 1983 (1976)), which provides in part as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The constitutional right asserted by plaintiffs is found in the fourteenth amendment of the Constitution of the United States, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Plaintiffs contend that the defendants acting as members of the Will County Board of Review, and thus under color of the statutes of the State of Illinois, deprived them of their property by causing addi-

tional taxes to be levied without giving them an opportunity to be heard. Defendants do not dispute that they acted under color of State statutes and, that plaintiffs have been deprived of property by taxation, but defendants insist there had been no denial of plaintiffs' constitutional right to due process.

Illinois statutes provide several remedies for property owners who seek redress for excessive taxes. When a taxpayer is dissatisfied with a decision by the board of review, he is entitled to appeal the board's decision to the Property Tax Appeal Board, and to seek judicial review of the decision of the Property Tax Appeal Board pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1981, ch. 120, pars. 592.1, 592.4.) Also, as an alternative remedy, any taxpayer not satisfied with the decision of the board of review may file objections in the circuit court (after paying the tax under protest) to obtain a tax refund. (See Ill. Rev. Stat. 1981, ch. 120, pars. 675, 676, 716.) According to the record on appeal, plaintiffs, or at least some of them, did seek relief from the Property Tax Appeal Board, but upon denial of their claim by the Property Tax Appeal Board, judicial review was not pursued.

We also note that in *Parratt v. Taylor* (1981), 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908, the Supreme Court considered a complaint by a prisoner seeking to recover damages for personal property lost by prison officials and held that remedies provided by the State were sufficient to satisfy the due process clause even though they were available only after the deprivation of property had occurred. The court stated:

"Our past cases mandate that some kind of hearing is required at some time before a State finally deprives a person of his property interests. The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.' *** we have rejected the proposition that 'at a meaningful time and in a meaningful manner' *always* requires the State to provide a hearing prior to the initial deprivation of property." 451 U.S. 527, 540, 68 L. Ed. 2d 420, 432, 101 S. Ct. 1908, 1915.

Plaintiffs also argue that the remedies available to it are not adequate to provide due process because they require payment of the tax under protest and because interest, costs and fees cannot be recovered. The response of *Parratt v. Taylor* (1981), 451 U.S. 527, 544, 68 L. Ed. 2d 420, 434, 101 S. Ct. 1908, 1917, is:

"Although the state remedies may not provide the respondent

with all the relief which may have been available if he could have proceeded under sec. 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Cf. Rosewell v. La Salle National Bank* (1981), 450 U.S. 503, 67 L. Ed. 2d 464, 101 S. Ct. 1221.

As the trial court noted, our courts have held that a party cannot complain that he has been deprived of procedural due process when he has declined to pursue the remedies which the State provides. (*E.g., Marlowe v. Village of Wauconda* (1980), 91 Ill. App. 3d 874, 415 N.E.2d 660; *Rawlings v. Department of Law Enforcement* (1979), 73 Ill. App. 3d 267, 391 N.E.2d 758.) In *Dusanek v. Hannon* (7th Cir. 1982), 677 F.2d 538, the court cited *Marlowe, Rawlings,* and other cases, and then observed:

"These decisions do not amount to a requirement of exhaustion of administrative remedies as a predicate to a section 1983 claim. Rather, they express the logical proposition that a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." 677 F.2d 538, 543.

The point of these cases as applied to the case at bar is that plaintiffs were not denied due process by the failure of the board of review to make available the statutorily required hearing before the taxes were due because plaintiffs had post-deprivation opportunities to present the merits of their claim before they were finally deprived of their property. (See *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148.) We conclude, therefore, that the action of the board of review, though illegal under the law of Illinois, did not deprive plaintiffs of their property without due process of law because Illinois law provides additional remedies to protect taxpayers from just the sort of arbitrary action by taxing officials as had been alleged here.

■ Plaintiffs further contend that defendants' arbitrary and discriminatory conduct towards plaintiffs' property was a violation of their right to equal protection of the laws. This argument is predicated upon the Illinois constitutional provision that requires all property to be taxed uniformly as provided by the General Assembly (Ill. Const. 1970, art. IX, sec. 4(a)). The Illinois legislature implemented the constitution with section 20a of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 501a), which provides that any classification of real property must be established by ordinance of the county board or it is void. Since the Will County Board has not enacted an ordinance creating classes, real property used for industrial and commercial purposes

in Will County is legally entitled to the same level of assessment as residential, agricultural, and all other classes of property. In addition, and in fact, these plaintiffs accuse the board of review of the sort of intentional and discriminatory action by public officials against classes of person or property which has traditionally run afoul of the equal protection clause.

When State officers engage in unlawful administration of a State statute fair on its face, causing unequal application to those who are entitled to be treated alike, a denial of equal protection exists if the discrimination was intentional or purposeful. (*Snowden v. Hughes* (1944), 321 U.S. 1, 88 L. Ed. 497, 64 S. Ct. 397; *International Society for Krishna Consciousness, Inc. v. City of Evanston* (1980), 89 Ill. App. 3d 701, 411 N.E.2d 1030.) In order to establish a discriminatory purpose, those aggrieved must show that "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group." (*Shango v. Jurich* (7th Cir. 1982), 681 F.2d 1091, 1104.) Thus more is required than misinterpretation of law or even arbitrary application of statutes and rules.

In *Snowden v. Hughes* the court used as a "familiar example" of the denial of equal protection "the failure of state taxing officials to assess property for taxation on a uniform standard of valuation as required by the assessment laws." (321 U.S. 1, 9, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401.) The court noted that one illustration of purposeful discrimination would be "a systematic under-valuation of the property of some taxpayers and a systematic over-valuation of the property of others, so that the practical effect of the official breach of law is the same as though the discrimination were incorporated in and proclaimed by the statute." (321 U.S. 1, 9, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401.) Although *Snowden* involved the right of a candidate to be certified as a nominee for political office and the court ultimately held that the departure from State law in that case did not amount to a violation of a Federal right, the principles laid down for defining equal protection violations have withstood the test of time and are, we believe, applicable to the case before us.

■ The allegations in the complaint here are much the same as the factual situation in the "familiar example" discussed in *Snowden*. Plaintiffs charge defendants with *purposefully* and *intentionally* discriminating against the classes of property owned by plaintiffs in that defendants unlawfully placed an increased financial burden on commercial and industrial property and not on other classes of property. According to the complaint, defendants have systematically overval-

ued two classes of property and have systematically undervalued other classes. Under the test of *Snowden*, plaintiffs have a cause of action against defendants. Similarly, in *Weissinger v. Boswell* (M.D. Ala. 1971), 330 F. Supp. 615, it was held that property owners were denied their fourteenth amendment right to equal protection where State officials intentionally and systematically refused to perform their duties in accordance with State law and, as a result, certain classes of property were assessed at a substantially higher percentage than others.

Defendants argue that the classification of real property by its industrial and commercial purposes has been recognized as having a rational basis and thus does not violate the constitution. Federal courts have said that while a State can classify property according to its use, the relevant question in an equal protection claim is whether the State has in fact done so. In other words, the fourteenth amendment commands equality of treatment unless the State has in fact established different and reasonable classes of property. (*Louisville & Nashville R.R. Co. v. Public Service Com.* (M.D. Tenn. 1966), 249 F. Supp. 894, 899.) But here it is not the classification itself that plaintiffs assert to be unconstitutional; it is the intentional, unlawful, purposefully discriminatory treatment of those classes that is alleged to impinge upon plaintiffs' rights.

We therefore conclude that, on the basis of the facts alleged in the complaint and admitted by the motion for judgment on the pleadings, plaintiffs have a cause of action under section 1983 of the Civil Rights Act for denial of their right to equal protection of the laws. Those portions of the complaint which we have quoted above assert a purposeful, intentional discrimination against two classes of property owners which is actionable conduct under Illinois and Federal law. We hold that the trial court erred in dismissing the complaint.

The judgment of the circuit court of Will County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

ALLOY and SCOTT, JJ., concur.