TAMPAM FARMS, INC., Plaintiff-Appellant, v. SUPERVISOR OF ASSESS-
MENTS FOR OGLE COUNTY *et al.*, Defendants-Appellees.

Second District    No. 2—94—0761

Opinion filed April 20, 1995.—Rehearing denied May 15, 1995.

Thomas R. McMillen, of Winnetka, for appellant.

Douglas P. Floski, State's Attorney, of Oregon, and M. Thomas Suits, of Suits & Heeg, P.C., of Polo, for appellees.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, Tampam Farms, Inc. (Tampam), appeals from a decision of the trial court, after a bench trial, in favor of the defendants, supervisor of assessments for Ogle County, county treasurer of Ogle County, and the County of Ogle. The plaintiff also appeals from an earlier trial court decision to decertify the class which the plaintiff had hoped to represent against the defendants. We affirm.

The procedural history of this case needs amplification. The present litigation was initiated in 1986 by the plaintiff with a complaint seeking administrative review of the 1986 real estate tax assessments levied against the plaintiff's farmland located in Ogle County, Illinois. On June 3, 1988, the plaintiff filed an amended complaint which alleged that public roads and highways which lie within the legal description of the plaintiff's property, as well as other land of no agricultural value, were being improperly assessed and taxed by Ogle County authorities. These allegations constituted count I of the amended complaint. Additionally, the plaintiff sought certification as a representative party of all Ogle County farmers who were similarly situated. Also included in count I of the complaint was a claim for relief pursuant to the Federal Civil Rights Act (42 U.S.C. § 1983 (1988)). The plaintiff's request for judicial review of the administrative appeal was now contained in count II of the amended complaint.

On October 24, 1988, Tampam filed a second amended complaint, which added to the section 1983 claim (42 U.S.C. § 1983 (1988)) in count I an allegation that the defendants had not debased the value of the farmland which contained fields of irregular size and shape.

Subsequently, the trial court, after a hearing, certified Tampam as the class representative for "[a]ll owners of farms in Ogle County, Illinois, containing public roads or highways, wasteland, and other land which has been illegally and unconstitutionally assessed and taxed by defendants."

The parties presented a stipulation for settlement to the trial court on May 2, 1989, which the court approved on that same date. The settlement agreement covered only the contentions in count I with reference to the improper assessment of public roads and highways and the improper assessment of wasteland. The administrative review contained in count II and the other issues contained in count I, specifically the assessor's failure to debase fields on the basis of their irregular size and shape and the alleged improper classification of certain lands, such as woodlots, were not settled by the stipulation. Under the settlement agreement, Tampam's attorneys also agreed to submit to the court their claims for fees and costs.

The trial court allowed the plaintiff attorney fees and costs in an amount which the plaintiff believed was inadequate. This court, on appeal, affirmed the trial court's decision with regard to awarding attorney fees and costs to the plaintiff for the wasteland claim under section 1988 (42 U.S.C. § 1988 (1988)) but not the public roads claim under section 1988 (42 U.S.C. § 1988 (1988)), for the public roads claim was not viable under section 1983 (42 U.S.C. § 1983 (1988)). See *Tampam, Inc. v. Property Tax Appeal Board* (1991), 208 Ill. App. 3d 127.

Subsequently, proceedings were reinstated before the trial court with regard to the remaining claims in the plaintiff's complaint. On September 24, 1990, count II of the plaintiff's complaint, which concerned the review of a final administrative decision, was dismissed without prejudice and without objection from the plaintiff. Consequently, the Property Tax Appeal Board (PTAB) was dropped as a defendant.

The plaintiff's third amended complaint, filed on May 24, 1993, contained only the section 1983 count (42 U.S.C. § 1983 (1988)).

The plaintiff also attempted to certify a class, using the same language as it had before the settlement, but omitting language relating to the claims which were resolved via the stipulation. The trial court denied certification of the class, reasoning:

> "The plaintiff, TAMPAM, INC., is the only taxpayer that paid the subject tax under protest and, otherwise, followed the state remedies; and, therefore, it has a different set of circumstances from any other potential member of the class."

The trial court subsequently granted a motion to allow the plaintiff to change its name in this litigation from Tampam, Inc., to Tampam Farms, Inc., to correspond to the plaintiff corporation's authorized name change.

At trial, the assessor for Ogle County admitted that he does not debase assessments of farmland based on the irregularity of the size or shape of the fields. The Illinois Revenue Act provides in pertinent part: "Cropland *** shall be debased to take into account factors including *** field size and shape." (35 ILCS 205/20e(3) (West 1992).) Furthermore, the assessor testified that while it would be "difficult," field size and shape could be debased. The assessor also admitted that the statute regarding debasement is binding upon him in his capacity as an assessor.

After the bench trial, the trial court entered judgment in favor of the defendants. The trial court relied upon language from constructive fraud cases and apparently decided that the assessor had exercised "honest judgment."

■ Our standard of review in this case is clear. Although a trial court's decision is always subject to review, a reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the trier of fact. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 194.) The trial judge, as the trier of fact, is in a superior position to a court of review to observe the demeanor of the witnesses while testifying, to judge their credibility, and to determine the weight their testimony should receive. (*In re Application of the*

*County Treasurer* (1989), 131 Ill. 2d 541, 549.) Thus, where conflicting testimony exists, the trial court's findings will not be disturbed unless they are against the manifest weight of the evidence. *In re Application of the County Treasurer*, 131 Ill. 2d at 549.

■ Also clear in this State are the procedures for appealing from a tax assessment. Any dissatisfied taxpayer must first file an assessment complaint with his or her county's board. (35 ILCS 205/108 (West 1992).) After a hearing, the county board notifies the taxpayer of its decision. If the taxpayer remains dissatisfied, he or she may follow one of two avenues. One option is to appeal to the PTAB. (35 ILCS 205/111.1 (West 1992).) Any adverse PTAB decision is subject to review in the appropriate Illinois circuit court (35 ILCS 205/111.4 (West 1992)), which, in turn, is subject to review via the regular appellate procedures (735 ILCS 5/3—112 (West 1992)). The plaintiff in the present case originally pursued this remedy, though its appeal of the PTAB decision was dropped when the plaintiff dropped count II. Alternatively, the taxpayer may pay the contested tax under protest and then file a tax objection when the county collector files an application for judgment before the circuit court. (35 ILCS 205/194, 235 (West 1992).) Any adverse court ruling is subject to appeal (35 ILCS 205/194 (West 1992)) and possible review by the United States Supreme Court (28 U.S.C. § 1257 (1988)).

We note that Tampam has continued to err in arguing standards associated with these State remedies in its section 1983 count (42 U.S.C. § 1983 (1988)). In our previous opinion with regard to the public road claim contained in the section 1983 count (42 U.S.C. § 1983 (1988)) in this case, we stated, "Tampam incorrectly equates its objections *** with an objection to the procedures and practices established by the State to obtain redress for the assessor's actions." (*Tampam, Inc.*, 208 Ill. App. 3d at 134.) Specifically, the plaintiff continues to argue that the assessor's method of assessment was constructively fraudulent, a concept which finds application in tax objection cases. (See *In re Application of the County Treasurer* (1989), 131 Ill. 2d 541.) In the present case, the plaintiff did not pursue a tax objection, instead seeking administrative review. Moreover, the plaintiff subsequently voluntarily dismissed the administrative review portion of its complaint, leaving only the section 1983 claims (42 U.S.C. § 1983 (1988)). Tampam does not cite any authority for the proposition that the doctrine of constructive fraud applies to its section 1983 claims (42 U.S.C. § 1983 (1988)), most likely because none exists. Indeed, while we decline to comment on the soundness of the court's logic, a recent appellate court decision from this State applied standards associated with the administrative review process, not the tax objector

process, in dismissing a section 1983 claim. *Murray v. Board of Review* (1992), 237 Ill. App. 3d 792, 796; 42 U.S.C. § 1983 (1988).

The method and guidelines under which the plaintiff brings its case are fairly clear. The pertinent portion of section 1983 of the Civil Rights Act states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State *** subjects, or causes to be subjected, any citizen of the United States *** to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." (42 U.S.C. § 1983 (1988).)

State courts have concurrent jurisdiction with Federal courts to hear claims founded upon alleged violations of section 1983. (*Beverly Bank v. Board of Review* (1983), 117 Ill. App. 3d 656, 660.) The plaintiff apparently claims that by disobeying the terms of the Illinois Revenue Act (35 ILCS 205/20e (West 1992)), the assessor violated: (1) the plaintiff's due process rights from the fifth amendment to the United States Constitution (U.S. Const., amend. V), applied to the States through the fourteenth amendment (U.S. Const., amend. XIV); (2) the plaintiff's equal protection rights from the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV); and (3) the plaintiff's due process and equal protection rights under the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Thus, the plaintiff's section 1983 claim (42 U.S.C. § 1983 (1988)) alleges that due process and equal protection violations have occurred.

Our proper focus on appeal, therefore, is whether, based upon the facts and evidence in the record, the trial court's decision to grant judgment to the defendants on the plaintiff's claims of due process and equal protection violations was against the manifest weight of the evidence. (*In re Application of the County Treasurer*, 131 Ill. 2d at 549.) We note that the trial court used standards associated with constructive fraud, a concept which might find application in the plaintiff's appeal from the PTAB decision in count II, which was voluntarily dismissed by the plaintiff, in determining the outcome of the plaintiff's section 1983 (42 U.S.C. § 1983 (1988)) claim. We also note, however, that a reviewing court may rely upon any ground present in the record to sustain the trial court's ruling. (*Estate of Blakely v. Federal Kemper Life Assurance Co.* (1994), 267 Ill. App. 3d 100, 109.) In the case at bar, we determine that sufficient grounds are present in the record to affirm the trial court's decision to enter judgment for the defendants on the plaintiff's section 1983 claim. 42 U.S.C. § 1983 (1988).

■ The law in this State is clear that a party cannot complain

that he has been deprived of procedural due process when he has declined to pursue the remedies which the State provides. (*Beverly Bank*, 117 Ill. App. 3d at 663.) The United States Court of Appeals for the Seventh Circuit provided the following summary of Illinois law:

> "These decisions do not amount to a requirement of exhaustion of administrative remedies as a predicate to a section 1983 claim. Rather, they express the logical proposition that a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." (*Dusanek v. Hannon* (7th Cir. 1982), 677 F.2d 538, 543, *cert. denied* (1982), 459 U.S. 1017, 74 L. Ed. 2d 512, 103 S. Ct. 379.)

As stated earlier, two procedures are available in Illinois to a taxpayer dissatisfied with his assessment: the taxpayer may appeal the PTAB decision (35 ILCS 205/111.1 (West 1992)) or may follow the tax objection route (35 ILCS 205/194, 235 (West 1992)). In the present case, the plaintiff appealed the PTAB decision, designating that appeal count II in his second amended complaint. However, Tampam subsequently dropped count II from its complaint. Where a taxpayer fails to complete the procedural remedies that this State makes available to him to contest an assessment, due process has not been violated and the dissatisfied taxpayer may not bring a section 1983 claim on that basis (see *Coleman v. McLaren* (N.D. Ill. 1985), 631 F. Supp. 749, 754), unless the procedural remedies are not "plain, speedy and efficient" (*Fair Assessment in Real Estate Association, Inc. v. McNary* (1981), 454 U.S. 100, 116 n.8, 70 L. Ed. 2d 271, 283 n.8, 102 S. Ct. 177, 186 n.8; *Rosewell v. La Salle National Bank* (1981), 450 U.S. 503, 516, 67 L. Ed. 2d 464, 475, 101 S. Ct. 1221, 1230). The Illinois remedies available have been deemed to satisfy the "plain, speedy and efficient" test. (*Raschke v. Blancher* (1986), 141 Ill. App. 3d 813, 817; *Coleman*, 631 F. Supp. at 753 n.13.) Thus, the assessor's admitted failure to follow Illinois law (35 ILCS 205/20e (West 1992)) did not deprive Tampam of its property without due process of law because Illinois provides additional remedies to protect taxpayers.

▪ We also determine that the record contains sufficient evidence to affirm the trial court's judgment entered against the plaintiff on the plaintiff's equal protection claim stemming from section 1983 and the United States and Illinois Constitutions. (42 U.S.C. § 1983 (1988); U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.) It is well established that laws impartial on their face may be administered unequally so as to constitute illegal discrimination. (*Yick Wo v. Hopkins* (1886), 118 U.S. 356, 374, 30 L. Ed. 220, 228, 6 S. Ct. 1064, 1073.)

But not every denial of a right conferred by State law involves a denial of equal protection. (*Snowden v. Hughes* (1944), 321 U.S. 1, 8, 88 L. Ed. 497, 502, 64 S. Ct. 397, 401.) The unlawful administration by State officers of a State statute fair on its face which results in an unequal application to those who are entitled to be treated alike is not a denial of equal protection unless there is shown to be present an element of intentional or purposeful discrimination. (*Snowden*, 321 U.S. at 8, 88 L. Ed. at 503, 64 S. Ct. at 401; *Fagiano v. Police Board* (1983), 98 Ill. 2d 277, 292.) As Justice Frankfurter stated, "[t]he Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state." (*Snowden*, 321 U.S. at 15, 88 L. Ed. at 506-07, 64 S. Ct. at 404 (Frankfurter, J., concurring).) In order to establish a discriminatory purpose, a plaintiff must show that the defendants singled out a particular group for disparate treatment and selected a course of action at least in part for the purpose of causing adverse effects on an identifiable group. (*Roche v. County of Lake* (1984), 126 Ill. App. 3d 976, 983; *Beverly Bank*, 117 Ill. App. 3d at 664.) A discriminatory purpose is not presumed, and there must be a showing of clear and intentional discrimination. *Snowden*, 321 U.S. at 8, 88 L. Ed. at 503, 64 S. Ct. at 401; *Roche*, 126 Ill. App. 3d at 983.

In *Snowden v. Hughes*, the United States Supreme Court used as a "familiar example" of the denial of equal protection "the failure of state taxing officials to assess property for taxation on a uniform standard of valuation as required by the assessment laws." (*Snowden*, 321 U.S. at 9, 88 L. Ed. at 503, 64 S. Ct. at 401.) The court then listed, as an example of such purposeful discrimination:

> "[A] systematic under-valuation of the property of some taxpayers and a systematic over-valuation of the property of others, so that the practical effect of the official breach of the law is the same as though the discrimination were incorporated in and proclaimed by the statute." (*Snowden*, 321 U.S. at 9, 88 L. Ed. at 503, 64 S. Ct. at 401.)

In *Beverly Bank*, the Illinois Appellate Court determined that summary judgment for the defendants was not appropriate where dissatisfied taxpayers brought suit under section 1983 (42 U.S.C. § 1983 (1988)) and alleged that the defendants purposefully and intentionally discriminated against the classes of property owned by the plaintiffs by systematically overvaluing commercial property yet systematically undervaluing residential or agricultural property. *Beverly Bank*, 117 Ill. App. 3d at 664-65.

■ Assuming *arguendo* in the present case that the assessor systematically overvalued farm property owned by the plaintiff and

others, the plaintiff has not alleged that the defendants have systematically undervalued any other class of property. Both the plaintiff's complaint and the record are devoid of any evidence upon which the trial court could find that the defendants demonstrated disparate treatment of Tampam or other farmers. Thus, the plaintiff has failed to allege, much less prove, intentional or purposeful discrimination. In equal protection cases, discrimination must be shown by facts alleged in the complaint (*Snowden*, 321 U.S. at 10, 88 L. Ed. at 503-04, 64 S. Ct. at 402; *Phillips v. Village of Libertyville* (1970), 120 Ill. App. 2d 172, 183) and will not be presumed (*Snowden*, 321 U.S. at 8, 88 L. Ed. at 503, 64 S. Ct. at 401; *Roche*, 126 Ill. App. 3d at 983). Thus, the plaintiff has failed to meet its burden with respect to its section 1983 claim (42 U.S.C. § 1983 (1988)) based on equal protection (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2), and judgment on behalf of the defendants was properly granted.

Tampam has alleged, however, that the assessor conducted his assessment in a constructively fraudulent manner. Assuming *arguendo* that the doctrine of constructive fraud finds application in section 1983 cases (42 U.S.C. § 1983 (1988)) alleging due process and equal protection violations, the trial court still correctly entered judgment in favor of the defendants. Our supreme court laid out the standards for constructive fraud in tax assessment cases in *In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 546. In that case, the collector taxed property owned by Ford Motor Company (Ford) based on a market value of $34 million. The trial court found the property to be worth $23 million and held that the collector's valuation was so excessive as to amount to constructive fraud. The supreme court reversed because Ford had failed to prove constructive fraud by clear and convincing evidence. Our supreme court stated:

> "A presumption exists that a tax is just and that the officers levying it have honestly discharged their duties [citation]; the burden is on the taxpayer to establish, by clear and convincing evidence, that the taxing authorities have not exercised their honest judgment and that the assessment is constructively fraudulent." (*In re Application of the County Treasurer*, 131 Ill. 2d at 550-51.)

Our supreme court further noted that in the cases which found constructive fraud present, the "differences in opinion regarding the value of the assessed property ranged from 25% to 80%." (*In re Application of the County Treasurer*, 131 Ill. 2d at 552.) The court stated:

> "While the extent to which a property has been overvalued by the assessing officer is a factor considered by the court in deciding whether an assessment is constructively fraudulent [citation], proof of overvaluation, alone, will not establish fraud [citation]. *To*

*be fraudulent, the overvaluation of property must not only be excessive, it must also be made under circumstances indicating that the assessment was not made in the exercise of honest judgment."* (Emphasis added.) *In re Application of the County Treasurer*, 131 Ill. 2d at 552.

■ Our application of these principles to the case at bar results in our determination that, even if the doctrine of constructive fraud was applicable, Tampam still failed to prove its case. Tampam asserts that the total amount of its productive land shown by the evidence was nearly 528 acres and that it was being taxed for a total of 727 acres. If we take these numbers to be true, Tampam was thus being taxed on approximately 199, or 27%, more acres than it asserts it should have been. However, Tampam has cited no evidence in the record with regard to how much the assessment on those extra 199 acres added to its total assessment. Because debasement of fields for irregular size and shape does not necessarily mean that the property would be valued at zero for purposes of assessment, and because even proper classifications of land would still have some value under the assessment scheme under the statute (35 ILCS 205/20e (West 1992)), we can only determine that the amount of the overassessment was less than 27%. As our supreme court noted, the lowest percentage of overassessment in which constructive fraud had been found was 25%. (*In re Application of the County Treasurer*, 131 Ill. 2d at 552.) Thus, by failing to prove the amount of the overvaluation and whether that amount was excessive, the plaintiff has failed to prove by clear and convincing evidence that the overassessment was made in a constructively fraudulent manner.

Furthermore, the trial court's finding that Tampam failed to prove, by clear and convincing evidence, that the assessment was not made in the exercise of honest judgment was not against the manifest weight of the evidence. The assessor admitted that he did not follow the statute (35 ILCS 205/20e (West 1992)) by not debasing for irregular field shape and size. However, because an assessment is made erroneously does not mean it was made dishonestly. (*In re Application of the County Treasurer*, 131 Ill. 2d at 554-55.) Furthermore, without proof of what the correct evaluation ought to have been, the plaintiff has not established that the evaluation is irreparably injurious. Nothing in the record indicates, by clear and convincing evidence, that the assessor was not exercising his honest judgment in making the assessments. Thus, assuming *arguendo* that the doctrine of constructive fraud applies to the plaintiff's section 1983 action (42 U.S.C. § 1983 (1988)), the trial court correctly entered judgment against the plaintiff.

■ The final issue before us is whether the trial court correctly denied certification of the class which Tampam had hoped to represent. We determine that the trial court did not abuse its discretion in making this decision. The plaintiff sought certification of a class consisting of "[a]ll owners of farms in Ogle County, Illinois containing land which has been illegally and unconstitutionally assessed and taxed by defendants." Because the owners of farms would all have differing amounts of irregularly sized and shaped fields and differing amounts of land which was allegedly improperly classified, we agree with the conclusion of the trial court that Tampam "has a different set of circumstances from any other potential member of the class." Therefore, certification of a class action in the present case would not be proper. 735 ILCS 5/2—801(2) (West 1992).

For the foregoing reasons, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

BOWMAN and COLWELL, JJ., concur.