**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3006
_____

JEWISH HOME OF EASTERN PA,

Petitioner

v.

CENTERS FOR MEDICARE AND MEDICAID SERVICES;
DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondents
_____

On Petition for Review from on Order by the Secretary
of the Department of Health and Human Services
(No.A-09-42)

Submitted January 27, 2011

Before:  FUENTES, CHAGARES, and ROTH, Circuit Judges.

(Filed    February 11, 2011             )

_____

OPINION
_____

CHAGARES, Circuit Judge.

 Jewish Home of Eastern Pennsylvania petitions for review of the final

decision of the Secretary of the Department of Health and Human Services

affirming the imposition of civil money penalties for failure to be in substantial

compliance with the Medicare and Medicaid Services participation requirements

pursuant to 42 C.F.R. § 483.25(h)(2).   For the reasons that follow, we will deny the petition for review.

I.

We write for the parties' benefit and recite only the facts essential to our disposition.   The Jewish Home of Eastern Pennsylvania ("JHEP") provides nursing care to Medicare beneficiaries.   JHEP is required to comply with the mandatory health and safety requirements for participation in the Medicare program.     To participate in the Medicare program, JHEP must submit to random surveys conducted by state departments of health to ensure that it is meeting all the program requirements.   See 42 C.F.R. § 488.305.

On December 9, 2005, the Pennsylvania Department of Health, acting on behalf of the Center for Medicare and Medicaid Services ("CMS"), conducted a survey of JHEP.   The survey concluded that JHEP had eight regulatory deficiencies, including violations of 42 C.F.R. § 483.25(h)(2), which requires a facility to ensure that each resident receives adequate supervision and assistance with devices to prevent accidents.   Based on these deficiencies, the CMS imposed a $350 per day fine from December 9, 2005 through January 26, 2006, totaling $17,150.   On October 16, 2006, the CMS performed another survey of JHEP and found twelve deficiencies.   CMS imposed a $400 per day

2

fine effective from October 16, 2006 through November 16, 2006, totaling $12,800.[1]

On August 9, 2006 and October 20, 2006, JHEP appealed both civil monetary penalties to an Administrative Law Judge ("ALJ"). JHEP argued that the allegations of noncompliance were based on the inadmissible disclosure of "privileged" quality assurance records. Additionally, JHEP claimed that the survey violated equal protection because it was the product of discrimination based on race and religion. The ALJ denied JHEP's motion to suppress the quality assurance records. Prior to the trial, JHEP stipulated that it failed to provide the necessary supervision or assistive devices to three of its residents, and subsequently presented no testimony as to these residents. In June 2008, a two-day trial took place and the ALJ upheld the fines against JHEP. The ALJ found that JHEP was not in substantial compliance with the participation requirements during the relevant time periods and declined to consider the equal protection claim because it lacked subject matter jurisdiction to hear substantive constitutional claims.

---

[1] Pursuant to 42 U.S.C. § 1395i-3(h)(2)(B)(ii), the CMS may impose a civil money penalty in an amount not to exceed $10,000 per day. There are two categories of monetary penalties: (1) "Penalties in the range of $3,050 - $10,000 per day are imposed for deficiencies constituting immediate jeopardy," 42 C.F.R. § 488.438(a)(1); and (2) "Penalties in the range of $50 - $3,000 per day are imposed for deficiencies that do not cause immediate jeopardy, but either have caused actual harm, or caused no actual harm, but have the potential for more than minimal harm," 42 C.F.R. § 488.438(a)(ii).

JHEP timely filed an appeal to the Board of Appeals. On June 18, 2009, the Board affirmed both of the civil monetary penalties. On July 10, 2009, JHEP filed the current petition for review.[2]

## II.

On review by this Court, the Secretary's findings "if supported by substantial evidence on the record considered as a whole, shall be conclusive." 42 U.S.C. § 1320a-7a(e). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (internal quotations omitted). In reviewing the Secretary's interpretation of a Department of Health and Human Services regulation, we may only overturn the interpretation if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). We give substantial deference to an agency's interpretation and application of its own regulations. Thomas Jefferson Univ., 512 U.S. at 512.

## III.

Notably, JHEP does not contest the finding that it was not in substantial compliance with the Medicare program during the relevant survey periods. Instead, JHEP argues that CMS's findings and penalties are invalid because they

---

[2] We have jurisdiction over this petition pursuant to 42 U.S.C. § 1320a-7a(e).

4

are (1) based on "privileged" quality assurance documents, and (2) are a result of racial and religious discrimination. We conclude that both of JHEP's grounds for review are unfounded.

JHEP maintains that the incident reports in question were generated by its quality assurance committee, and as such, are subject to disclosure and use restrictions under 42 U.S.C. § 1396r(b)(1)(B).[3] The language of 42 U.S.C. § 1396r(b)(1)(B), however, limits the scope of protection from discovery to the records of the committee. See, e.g., State ex rel. Boone Ret. Ctr. v. Hamilton, 946 S.W.2d 740, 743 (Mo. 1997) (finding that 42 U.S.C. § 1396r(b)(1)(B) "protects the committee's own records -- its minutes or internal working papers or statements of conclusions -- from discovery. No honest reading of the statute, however, can extend the statute's privilege to records and materials generated or created outside the committee and submitted to the committee for its review.").

After reviewing the record presented, we conclude that the documents in question were contemporaneous, routinely-generated incident reports and not the quality assurance team's minutes, internal papers, or conclusions. As such, these incident reports are not subject to disclosure restrictions. Hence, these

---

[3] Section 1396r(b)(1)(B) provides: "A State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph." This subparagraph mandates that the nursing facility have a quality assessment and assurance team which "meets at least quarterly to identify issues with respect to which quality assessment and assurance activities are necessary" and "develops and implements appropriate plans of action to

incident reports along with JHEP's prior stipulations provided the Secretary with ample evidence to determine that JHEP was not in substantial compliance with the Medicare program.

correct identified quality deficiencies."

JHEP also alleges that the issuance of civil monetary fines violates equal protection because the fines are the result of selective enforcement based on race and religion.[4]  Selective discriminatory enforcement of a facially valid law is unconstitutional under the Equal Protection Clause.  See Yick Wo v. Hopkins, 118 U.S. 356, 373 (1886); Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993).  The Supreme Court has held that a law which is "fair on its face and impartial in appearance" may nonetheless constitute illegal discrimination "if it is applied and administered by public authority with an evil eye and an unequal hand."  Yick Wo, 118 U.S. 356, 373-74 (1886) (finding that where Chinese nationals did not violate city ordinances but were still fined, the only reason for the fines was discrimination based on race and nationality in violation of equal protection).

To establish a selective-enforcement claim, JHEP must show (1) that it was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some arbitrary factor, . . . or to prevent the exercise of a fundamental right."  Dique v. N.J. State Police, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quotations omitted)).  Hence, to maintain an equal protection claim of this sort, JHEP must provide evidence of intentional or purposeful discriminatory purpose, not mere unequal treatment or adverse effect.  Snowden v. Hughes, 321 U.S. 1,

---

[4] While JHEP is a non-denominational facility, JHEP argues that it may maintain an equal protection claim because of its association with a protected group --

7

8 (1944). JHEP must show that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects . . . ." Wayte v. United States, 470 U.S. 598, 610 (1985) (quotations omitted).

JHEP relies upon three primary documents to show discriminatory effect and discriminatory purpose. First, JHEP submits side-by-side comparisons of citations issued to JHEP as compared to other local facilities. JHEP also provides a statistical report which concluded that the number of citations issued to JHEP was high in comparison to other facilities surveyed from the Scranton Field Office and that this finding was likely the result of bias and not likely the result of differences in the quality of care, error or chance. Additionally, JHEP presents the affidavit of an employee who claims that a CMS surveyor made a discriminatory statement in October 2004, over a year before the surveys in question. Specifically, in surveying whether JHEP provided activities on Saturdays for residents of all denominations, the surveyor was told that there was a Kiddush—a ceremony involving a blessing and food that all individuals were invited to regardless of their religious affiliations. According to the employee, the surveyor responded that she was Christian and would feel uncomfortable attending such an activity.

We hold that JHEP has failed to establish a claim for selective enforcement under the Equal Protection Clause. JHEP has not demonstrated that CMS
_____
persons of Jewish ancestry.

8

issued fines with an intentionally discriminatory purpose.  We find JHEP's reliance on the surveyor's alleged statement to be misplaced as it was clearly taken out-of-context, was not contemporaneous to the surveys in question, and was not relevant or facially discriminatory.  Additionally, JHEP has failed to show that it was treated differently from other similarly situated facilities.  Therefore, we conclude that JHEP's equal protection claim has no merit.

IV.

After considering all of JHEP's arguments, we will deny the petition for review.