NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2616
_____

JEWISH HOME OF EASTERN PENNSYLVANIA,
*Petitioner*

v.

CENTERS FOR MEDICARE & MEDICAID SERVICES;
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
*Respondents*
_____

On Petition for Review from the Departmental Appeals Board
of the Department of Health and Human Services
(Docket No. A-11-19, Decision No. 2380)
_____

Submitted Under Third Circuit LAR 34.1(a)
February 9, 2012
_____

Before: SLOVITER, VANASKIE, *Circuit Judges*,
and POLLAK, *District Judge**

(Opinion filed: March 14, 2012)

_____

OPINION
_____

_____

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

POLLAK, *District Judge*.

The Centers for Medicare and Medicaid Services ("CMS") is the division of the Department of Health and Human Services that superintends the operations of the Medicare program. Among CMS's many responsibilities are the setting of standards for facilities providing nursing care for Medicare patients and the monitoring of compliance with those standards. In Pennsylvania the monitoring function is carried out by personnel of regional offices of the Pennsylvania Department of Health, who conduct periodic inspections on CMS's behalf of nursing facilities in the region that care for Medicare patients. The results of the inspections are reported to CMS. When the reported results lead CMS to conclude that a facility has been significantly non-compliant with prescribed standards, CMS is empowered to impose a civil money penalty ("CMP") on the offending facility, the penalty being measured by the severity and duration of non-compliance. 42 U.S.C. § 1395i-3(h)(2)(B)(ii); 42 C.F.R. §§ 488.430 *et seq*. An entity challenging a CMP may appeal to an administrative law judge ("ALJ") and thence to the Appellate Division of the Departmental Appeals Board ("DAB"). 42 C.F.R. § 402.19. An adverse DAB ruling is then subject to review by a court of appeals. 42 U.S.C. §§ 1320a-7a(e), 1395i-3(h)(2)(B)(ii)(I); 42 C.F.R. § 402.21.

In the case at bar, the Jewish Home for Eastern Pennsylvania ("JHEP")—a nursing facility located in Scranton, Pennsylvania—petitions for review of a DAB decision sustaining a CMP in the sum of $42,600. The CMP was calculated at the rate of $600 per day of unremedied deficiencies, pursuant to inspections conducted by personnel of the

2

Scranton office of the Pennsylvania Department of Health in November 2007 and January 2008.

In seeking review of the CMP, petitioner JHEP is not contesting CMS's findings of deficiencies in nursing care. Instead, invoking *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), JHEP asserts that it has been the target of selective enforcement, in that the facility has been allegedly singled out for harsher penalties than other comparable nursing facilities solely because JHEP, while non-denominational, is associated with Jewish culture and values.

In its brief in this court, JHEP notes that this case "involves different (new) fines but the same parties and similar facts" as an earlier case, *Jewish Home of Eastern PA v. Centers for Medicare and Medicaid Services*, 413 F. App'x 532 (3d Cir.), *cert. denied*, 132 S. Ct. 837 (2011). (To avoid confusion we will refer to the cited case as *JHEP I* and the case at bar as *JHEP II*.) In *JHEP I*—the earlier case—JHEP also mounted a selective enforcement defense against the imposition by CMS of a CMP based on deficiencies found by CMS following a 2005 inspection conducted by personnel of the Scranton office of the Pennsylvania Department of Health.

The correctness of JHEP's statement in its brief that *JHEP I* and *JHEP II* involve "similar facts" is shown by comparing central elements of the offers of proof submitted to the respective ALJs by JHEP in the two cases:

1. **Offer of proof in *JHEP I* (excerpts):**

> Petitioner will meet its burden to show that the citations were tainted by racial and/or religious bias with three types of evidence: 1) expert statistical evidence comparing and contrasting CMS'

3

Quality Measures (QM) data for all facilities surveyed from the Scranton Field Office (SFO) as well as all F-324 citations issued by the SFO, 2) eye-witness testimony regarding surveyor religious bias and SSA management's failure to investigate or take meaningful action when considering complaints of bias; and 3) a side-by-side comparison of CMS 2567 factual narratives and citations under F-324 issued by the SFO.

* * * *

Petitioner will introduce the Report of Samuel P. Wilcock, Ph.D., an expert in probability and statistics as well as his curriculum vitae. This report concludes with a very high degree of confidence that a valid statistical study of the F-324 citations issued to the JHEPA and other facilities in the SFO reveals that the F-324 citations were not issued using race/religion neutral criteria.

Petitioner has also analyzed the F-324 citations issued to the JHEPA in the surveys at issue in this case and F-324 citations issued to other facilities in the SFO. This analysis reveals that the SFO assigns a higher scope and severity rating to the JHEPA in cases where the facts of each facility's alleged noncompliance is equivalent or identical. This evidence strengthens the conclusion that the citations issued in the surveys at issue in this case are tainted with bias.

. . . .

Petitioner will offer the testimony of Sara Raposo, the former JHEPA Activities Director. Ms. Raposo will testify that a SFO survey inspector named "Kieran Bunnel (Ph.)" expressed survey bias which was understood by Ms. Raposo to be based on Ms. Bunnel's Christian ideology, faith or view-point. Specifically, Ms. Bunnel said words to the effect of: "Well, I'm Christian, and I wouldn't feel comfortable [sharing a non-denominational pastry repast] Kiddush" offered by the JHEPA to its residents.

In other words, because Ms. Bunnel was "Christian" she did not feel "comfortable" sharing pastries at the facility event which was non-denominational, open to all, but which happened to have the Hebrew name, Kiddush. Because Ms. Bunnel did not feel "comfortable," she concluded that the pastry event was not one that all residents could enjoy. The SFO then cited the facility. Ms.

4

Reposo's [sic] testimony will clearly establish that at least this SFO surveyor used her "Christian" point of view to assess the adequacy of the facility's activities program.

Petitioner will offer the testimony of Mark White, the SSA Regional Manager. He is expected to testify by subpoena that he received complaints about Ms. Bunnel. These complaints included a JHEPA IDR [request for Informal Dispute Resolution] that complained that Ms. Bunnel recommended citing the JHEPA based on religious criteria. Mr. White is expected to testify that he wrote to the JHEPA indicating that he had "thoroughly considered" the IDR complaint and found it to be without merit, even though he failed to conduct any real investigation. In other words, even though the SSA had received other complaints about Ms. Bunnel, Mr. White issued a boilerplate response to the JHEPA and did not take the complaint seriously.

*JHEP I*, Petitioner's Br. at 20-22, 24-25.

2. **Offer of proof in *JHEP II*:**

Petitioner's second affirmative defense is that evidence should be excluded under 42 C.F.R. § 498.61 because the citation upon which the CMP rests is the result of unlawful discrimination. . . .

Petitioner will support this defense with the testimony of three primary witnesses. The first is Dr. Samuel Wilcock, Ph.D., an expert statistician. Dr. Wilcock will testify that the high level of F-324 citations issued to the JHEPA by the Scranton Field Office (SFO) is likely to be the result of bias.

The second is Ms. Sara Raposo. Ms. Raposo is the former JHEPA Activities Director. Ms. Raposo will testify that "Kieran Bunnel (Ph.)," an SSA surveyor that has since been terminated by the SSA, expressed a religious bias when she investigated the JHEPA activities program and issued a citation for failure to provide appropriate activities.[1]

---

[1] In the administrative proceedings that led to the present petition, JHEP's counsel acknowledged that JHEP had "no specific evidence of surveyor bias" by any of the Scranton inspectors involved in the current case.

The third is Mr. Mark White, who is expected to testify under subpoena. Mr. White is the SSA Regional Manager with responsibility for supervising the SFO and with responsibility for reviewing and deciding facility requests for Informal Dispute Resolution (IDR). Mr. White is expected to testify that he received an IDR from the JHEPA raising the issue of religious discrimination but that he failed to conduct any meaningful investigation after receipt of the IDR.

In addition, Petitioner has prepared a side-by-side comparison of the F-324 citations issued in this case with F-324 citations issued to non-Jewish facilities in the SFO. The comparison, which is included in this Narrative, clearly shows that the JHEPA is treated more harshly than non-Jewish facilities for alleged violations which are factually similar *if not identical*.

Petitioner will also introduce Quality Measures (QM) data, and SFO survey data to support the allegation of bias.

*JHEP II*, Petitioner's Br. at 6-7.

The panel of this court that considered *JHEP I* denied JHEP's petition for review on February 11, 2011. 413 F. App'x 532. The panel ruled as follows:

To establish a selective-enforcement claim, JHEP must show (1) that it was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some arbitrary factor, . . . or to prevent the exercise of a fundamental right." *Dique v. N.J. State Police*, 603 F.3d 181, 184 n. 5 (3d Cir. 2010) (quotations omitted). Hence, to maintain an equal protection claim of this sort, JHEP must provide evidence of intentional or purposeful discriminatory purpose, not mere unequal treatment or adverse effect. *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497 (1944). JHEP must show that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects . . . ." *Wayte v. United States*, 470 U.S. 598, 610, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985) (quotations omitted).

JHEP relies upon three primary documents to show discriminatory effect and discriminatory purpose. First, JHEP submits side-by-side comparisons of citations issued to JHEP as compared to other local facilities. JHEP also provides a statistical report which concluded that the

6

number of citations issued to JHEP was high in comparison to other facilities surveyed from the Scranton Field Office and that this finding was likely the result of bias and not likely the result of differences in the quality of care, error, or chance. Additionally, JHEP presents the affidavit of an employee who claims that the CMS surveyor made a discriminatory statement in October 2004, over a year before the surveys in question. Specifically, in surveying whether JHEP provided activities on Saturdays for residents of all denominations, the surveyor was told that there was a Kiddush—a ceremony involving a blessing and food that all individuals were invited to regardless of their religious affiliations. According to the employee, the surveyor responded that she was Christian and would feel uncomfortable attending such an activity.

We hold that JHEP has failed to establish a claim for selective enforcement under the Equal Protection Clause. JHEP has not demonstrated that CMS issued fines with an intentionally discriminatory purpose. We find JHEP's reliance on the surveyor's alleged statement to be misplaced as it was clearly taken out-of-context, was not contemporaneous to the surveys in question, and was not relevant or facially discriminatory. Additionally, JHEP has failed to show that it was treated differently from other similarly situated facilities. Therefore, we conclude that JHEP's equal protection claim has no merit.

*JHEP I*, 413 F. App'x at 535-36, *cert. denied*, 132 S. Ct. 837 (2011).

It thus appears that the issue of whether CMS has been engaged in selective enforcement with respect to petitioner JHEP has been decided adversely to the petitioner in litigation that has gone to final judgment between the same parties as the parties in the case at bar. Under these circumstances, the petitioner is precluded from relitigating the selective enforcement issue. *See* Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different

7

claim."); *accord Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007).

There is one additional, novel argument in JHEP's briefing to support the present petition, namely that due process has been offended because the facility has not been afforded an evidentiary hearing on its selective enforcement claim.[2] But JHEP is not entitled to an evidentiary hearing to explore an issue that has already been fully litigated to final judgment in prior litigation.

For the foregoing reasons, JHEP's petition for review will be denied.

---

[2] It is to be noted that the panel ruling in *JHEP I*, quoted at length above, reviewed JHEP's proposed testimony and documentary evidence and found that, given full weight, they were unpersuasive on JHEP's equal protection claim. On September 6, 2011, JHEP filed a motion to stay appellate review of the current petition and to assign the matter to a district court for an evidentiary hearing. The motion was denied on October 7, 2011.

In amplification of the motion to stay, JHEP alluded to a report by a probability expert, Dr. William Fairely (additional to the report by Dr. Wilcock, referred to in JHEP's offer of proof in *JHEP I* and *JHEP II*). But the report of Dr. Fairely is not annexed to JHEP's motion to stay, nor is it contained in the appendix, and hence it cannot be considered.